IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

JOEL VEGA ORTIZ, ET AL.,

　　Plaintiffs,

　　v.

COOPERATIVA DE SEGUROS MÚLTIPLES
DE PUERTO RICO, ET AL.,

　　Defendants.

CIV. NO.: 19-2056 (SCC)

**OMNIBUS OPINION AND ORDER**

Plaintiffs Joel Vega Ortiz, Ernie Rivera Díaz, Gretchen
Montalvo Espinosa, Jamilh M. Elias and Maribella Ramos
Prieta ("Plaintiffs"),[1] participants of the Real Legacy
Assurance Retirement Plan (the "Plan") filed the instant suit
for violations of the Employee Retirement Income Security
Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461,

---

[1] Plaintiffs have indicated that they intend to seek class certification.
However, to date, the record reflects that they have not done so.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 2

and negligence under Puerto Rico law, against co-defendants Cooperativa de Seguros Múltiples de Puerto Rico ("CSM"), Banco Popular de Puerto Rico ("BPPR"), Ruth E. Gómez Arias ("Ms. Gómez Arias"), Luis J. Vilaró Suárez ("Mr. Vilaró Suárez), Luisana Rincón ("Ms. Rincón"), Aleida Alsina ("Ms. Alsina"), Santander Securities, LLC ("SSLLC"), Troncoso Consulting Group, Inc. ("Troncoso"), Willis Towers Watson US, LLC ("Willis"), John Doe(s), and ABC Insurance Companies ("Co-defendants"). *See* Docket No. 70-1. Specifically, in their Second Amended Complaint ("SAC"),[2] Plaintiffs advance a host of claims grounded in the Co-defendants purported breach of fiduciary duties, co-fiduciary liability, vicarious liability, failure to comply with disclosure

---

[2] Plaintiffs' original complaint can be found at Docket No. 1. A first amended complaint was filed at Docket No. 46, and after Co-defendants consented to Plaintiffs' request to once again amend the complaint to include claims for breach of fiduciary duties against Santander Securities, LLC ("SSLLC"), *see* Docket No. 70, the Court deemed what will be referred to throughout this Omnibus Opinion and Order as the Second Amended Complaint ("SAC"), as filed, *see* Docket No. 72.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 3

and reporting requirements, and a negligence claim under Puerto Rico law against the Plan's actuarial firms. *Id.*

Following the filing of the SAC, Co-defendants filed dispositive motions. We now address those motions. The Court will first examine the motion to dismiss filed by Co-defendants CSM, Ms. Gómez Arias, Mr. Vilaró Suárez, and Ms. Rincón ("Cooperativa Defendants") under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) ("Cooperativa Defendants' Motion to Dismiss"). *See* Docket No. 91. The Cooperativa Defendants posit that dismissal is necessary because Plaintiffs did not exhaust their administrative remedies prior to filing the instant suit. *Id.* The Cooperativa Defendants also argue that dismissal is warranted because Plaintiffs failed to join: (1) Real Legacy Assurance Company, Inc. ("RLA"); (2) the Puerto Rico Insurance Commissioner ("Commissioner"), (3) Mr. Juan Moldes Rodríguez ("Mr. Moldes Rodríguez"); (4) Ramón L. Ortiz Rodríguez ("Mr. Ortiz Rodríguez"); (5) Mr. Manuel

Díaz ("Mr. Díaz"); and (6) UBS Financial Services, Inc. ("UBS"). *Id.*[3] Plaintiffs opposed, *see* Docket 124, and the Cooperativa Defendants' reply followed, *see* Docket No. 138.[4] The Cooperativa Defendants also filed two supplementary motions in support of their Motion to Dismiss. *See* Docket Nos. 121 and 147. The first of those motions has already been deemed as moot by the Court. *See* Docket No. 155. The second—which was opposed by Plaintiffs, *see* Docket No. 149—will be analyzed in tandem with the primary Motion to Dismiss at Docket Number 91.

The Court will then address Co-defendant SSLLC's

---

[3] Co-defendants BPPR, Troncoso, and Ms. Alsina filed a motion to partially join the Cooperativa Defendants' Motion to Dismiss as to Plaintiffs' failure to exhaust administrative remedies and failure to join RLA, the Commissioner, Mr. Moldes Rodríguez, and Mr. Ortiz Rodríguez, *see* Docket No. 92, which we allowed, *see* Docket No. 116.

[4] Motions to partially join the Cooperativa Defendants' Reply were filed by BPPR and Ms. Alsina, *see* Docket Nos. 139-140, as to Section I and Section II as to the Commissioner, Mr. Moldes Rodríguez, and Mr. Ramón Ortiz. We allowed the same. *See* Docket Nos. 145.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 5

Motion to Dismiss, *see* Docket Nos. 100[5] and 101, under Rule 12(b)(6) ("SSLLC's Motion to Dismiss"). There, SSLLC moves to dismiss the breach of fiduciary and co-fiduciary liability claims advanced by Plaintiffs. That motion was opposed by Plaintiffs, *see* Docket No. 125, and was followed by SSLLC's reply, *see* Docket No. 137.

Lastly, the Court will analyze Willis's Motion to Dismiss under Rule 12(b)(6) ("Willis's Motion to Dismiss").[6] Docket No. 141. In that motion, Willis moves for dismissal on the grounds that it is not an ERISA fiduciary and because ERISA preempts the negligence claim advanced under Puerto Rico law. *Id.* Plaintiffs opposed, *see* Docket No. 143, and Willis replied, *see* Docket No. 146.

---

[5] While the record shows that the document at Docket No. 100 is pending, that document is merely a cover page for SSLLC's Motion to Dismiss. SSLLC's memorandum advancing the substantive reasons as to why all claims against it should be dismissed can be found at Docket No. 101.

[6] Troncoso moved to join Willis's Motion to Dismiss and Reply. *See* Docket No. 156. The Court granted that request. Docket No. 157.

For the reasons set forth below, the Court DENIES the motions to dismiss at Docket Numbers 91, 100 and 141, and deems as NOTED the Cooperativa Defendants supplementary motion at Docket Number 147.

## I. Background

### A. The Plan

The Court's starting point is July 1, 1986, the date that the Plan was established. Docket No. 70-1 at ¶ 21. The Plan was set-up by the Royal Insurance Company of Puerto Rico, Inc., the predecessor in interest to RLA. *Id.* In late 2003, CSM "acquired 100% of RLA." *Id.* at ¶¶ 6, 23. Shortly thereafter, in mid-2004, RLA became the Plan's Sponsor. *Id.* at ¶ 22.

As a defined benefit plan, the Plan was funded with the contributions made by RLA (or its predecessor in interest). [7] *Id.* at ¶¶ 28, 72. In order to become a Plan participant, RLA

---

[7] When referring to RLA, Plaintiffs note in the SAC that it also refers to "its predecessor in interest." As such, throughout this Omnibus Opinion and Order when RLA is mentioned, this also includes "its predecessor in interest."

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 7

employees had to have turned twenty-one (21) years of age and worked at RLA for at least six (6) months. *Id.* at ¶ 27. After having worked at RLA for at least five (5) years, Plan participants become fully vested in their accrued benefits pursuant to the Plan. *Id.* Plaintiffs aver that they are participants of the Plan whose "rights under the Plan are vested." *Id.* at ¶¶ 1-5.

The Plan was amended on January 1, 2006. *Id.* at ¶ 26. Those amendments reflect, *inter alia*, that the Plan was structured in such a way that it was—and would remain—in compliance with ERISA and the Puerto Rico Insurance Code. *Id.*

### B. Key Players

#### a. The Plan's Administrative Committee

The Plan's Administrative Committee, which was appointed by the Board of Directors of RLA, and tasked with serving as the "Plan Administrators," was made up of the following individuals: (1) Ms. Gómez Arias, Secretary of the

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 8

Board of Directors of CSM, who also served as corporate
secretary of RLA; (2) Mr. Vilaró Suárez, Vice President of
Administration of CSM; (3) Ms. Rincón, Director of Human
Resources of CSM; and (4) Ms. Alsina, Director of Finance of
RLA until March 27, 2017. *Id.* at ¶¶ 8-11, 29.

Amongst its responsibilities, the Administrative
Committee had to ensure the Plan's compliance with ERISA,
establish an investment policy (the "Plan's Investment
Policy"), intended for the Plan's Trust Fund and select an
actuarial firm that would render such services for the Plan. *Id.*
at ¶¶ 30-32.

**b.** *The Actuarial Firms: Troncoso and Willis*

Troncoso and, eventually, Willis were tapped by the
Administrative Committee to serve as the Plan's actuarial
firms. *Id.* at ¶¶ 32, 169-170. Plaintiffs indicate that Troncoso's
stint as the Plan's actuarial firm began in either 2008 or 2009
and ended at some point in 2016. *Id.* at ¶¶ 15, 169. For its part,
Willis served as the Plan's actuarial firm from January 2016

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 9

until approximately February 2018. *Id.* at ¶¶ 16, 170.

As the Plan's actuaries, both Troncoso and Willis were responsible for submitting annual reports which included calculations regarding the funding targets and actuarial shortfalls of the Plan. *Id.* at ¶ 171. Those calculations were then used to lock down the amount in contributions that had to be made to the Plan. *Id.*

### c. *BPPR as the Plan's Trustee and SSLLC as the Plan's Investment Manager*

The Plan also provided for RLA's Board of Directors to name a plan trustee to oversee the Plan's Trust Fund, which is where the contributions made to the Plan were kept. *Id.* at ¶ 33. BPPR's involvement with the Plan began on May 22, 2007, after a Trust Agreement ("Plan's Trust Agreement") was executed, naming it the Plan's Trustee. *Id.* at ¶ 34.

Pursuant to the Plan's Trust Agreement, an investment manager could also be named. *Id.* at ¶ 36. According to Plaintiffs, between 2007 and 2015, SSLLC served as the Plan's Investment Manager. *Id.* at ¶ 37. Because of this appointment,

SSLLC was tasked with relaying Plan related investment instructions to BPPR. *Id.* at ¶ 38.

SSLLC, however, was not the only entity that could direct BPPR as to how it could carry out its investment duties regarding the Plan, for the Administrative Committee was also authorized to issue written instructions to BPPR regarding the administration and investment of the Plan's assets. *Id.* at ¶ 39. But according to Plaintiffs, even though the Administrative Committee held such powers, they never issued written directives concerning specific investments. *Id.*

### C.  *Investing the Plan's Assets*

Plaintiffs maintain that, in 2014, over $4.1 million dollars of the Plan's assets were invested in Puerto Rico Bonds, including closed end bonds, issued by the Commonwealth of Puerto Rico's instrumentalities and public corporations. *Id.* at ¶ 41. Specifically, they note that, as of December 31, 2014, roughly twenty-five percent (25%) of the Plan's assets were invested in Puerto Rico Bonds while one hundred percent

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 11

(100%) of the Plan's municipal bonds were also invested in Puerto Rico Bonds. *Id.* at ¶ 43. According to Plaintiffs, this investment practice resulted in the overconcentration of the Plan's assets in Puerto Rico Bonds. *Id.* These Puerto Rico Bonds, however, received a "junk" status classification on February 4, 2014. *Id.* at ¶ 44. Between January 2012 and January 2016, actuarial reports prepared by Troncoso show that the Plan saw a decrease in its funding. *Id.* at ¶ 47. Albeit the Plan's decrease in its funding, additional contributions were not made in order to guarantee that the Plan remained solvent. *Id.* at ¶¶ 49-50, 53.

Plaintiffs contend, in the alternative, that the Plan's underfunding coupled with the failure to effectuate the necessary contributions to the Plan so that it would meet its funding targets, can be attributed to Troncoso and Willis. *Id.* at ¶¶ 58-61, 172, 174, 176. According to Plaintiffs, Troncoso and Willis failed to accurately report and calculate the Plan's funding status and targets and it was precisely that purported

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 12

negligence in their reporting duties that triggered a domino effect that led the Plan's Sponsor to make contributions that were well below the funding requirements established by ERISA. *Id.* at ¶¶ 62, 173, 176.

### D. *The End of the Plan*

Plaintiffs posit that the ramifications of the Plan's underfunding became evident once it was frozen on December 31, 2015, and benefits ceased to accrue. *Id.* at ¶ 63. But, even prior to that date, Plaintiffs allege that the Plan did not satisfy ERISA's funding targets and was instead underfunded by millions of dollars and did not have sufficient assets to disburse payments for the benefits that had accrued prior to the freeze. *Id.* at ¶¶ 45-47, 63.

On September 28, 2018, RLA entered into a rehabilitation process with the Office of the Puerto Rico Insurance Commissioner. *Id.* at ¶ 64. But effective December 31, 2018, the Plan was terminated by RLA. *Id.* at ¶ 67. Beginning on January 18, 2019, RLA entered into a liquidation process. *Id.*

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 13

at ¶ 65.

According to Plaintiffs, at some point in April 2019, the Plan participants were notified by way of an unsigned letter relayed by RLA's liquidator that the Plan had been underfunded. *Id.* at ¶ 76. On or around that same time, the Plan participants were also informed that it was precisely during the rehabilitation process that the Administrative Committee and BPPR were reportedly notified that the Plan was underfunded. *Id.* at ¶ 66. In response to this representation, Plaintiffs contend that both the Administrative Committee and BPPR were—or should have been—aware of the Plan's underfunding troubles before April 2019. *Id.*

By way of a letter dated October 18, 2019, RLA informed Plan participants that only some Plan participants would receive benefits under the Plan. *Id.* at ¶¶ 68, 71. But even those that were to receive benefits under the Plan were only set to receive approximately sixty-five percent (65%) of the total

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 14

amount that they were supposed to receive in benefits had the Plan not been underfunded. *Id.* at ¶¶ 69, 71.

Plaintiffs sustain that, at the time that the Plan was terminated, it was only between sixty percent (60%) and seventy percent (70%) funded. *Id.* at ¶ 60. Further, Plaintiffs state that the Plan was, for a time, insured by the Pension Benefit Guaranty Corporation (the "PBGC"). *Id.* at ¶¶ 72-75. Ultimately, however, an irrevocable election, in order for the Plan—and the Plan's participants for that matter—to reap the benefits of that coverage, was not made. *Id.* at ¶ 74. Because of this, the PBGC deemed that it did not cover the Plan. *Id.*

Having rehearsed the facts of this case as set forth by Plaintiffs in their SAC, we turn to the motions to dismiss before us.

## II. Analysis

### A. The Cooperativa Defendants' Motion to Dismiss

#### a. The Nature of Plaintiffs' Claims and Whether Administrative Exhaustion is Required

##### i. Standard of Review

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 15

The failure to exhaust administrative remedies argument advanced by the Cooperativa Defendants in their Motion to Dismiss is framed pursuant to Rules 12(b)(1) and 12(b)(6). While the First Circuit has yet to decide whether the failure to exhaust administrative remedies under ERISA is a jurisdictional issue to be analyzed under the strictures of Rule 12(b)(1), the distinction is ultimately immaterial.[8] The reason being that, while Rules 12(b)(1) and 12(b)(6) are "conceptually distinct," the analysis employed under both is the same. *See Lyman v. Baker*, 954 F.3d 351, 359-60 (1st Cir. 2020) (explaining that because dismissal under Rules 12(b)(1) and 12(b)(6) take into consideration "the same basic principles," a court "need only articulate [those] principles once . . . under the well-

---

[8] Courts within this District have stated that exhaustion of administrative remedies in the ERISA context is not a jurisdictional matter and can therefore be analyzed pursuant to Rule 12(b)(6). *See, e.g., Ortiz-Torres v. Cooperativa de Seguros de Vida de Puerto Rico (COSVI), Grp. Health Plan COSVIMED,* Civ. No. 08-1154, 2009 WL 3487791, at *3 (D.P.R. Oct. 22, 2009); *Torres Andino v. Wyeth,* Civ. No. 06-1218, 2007 WL 9761405, at *7 (D.P.R. Mar. 19, 2007); *Fernández-Vargas v. Pfizer Pharmaceuticals, Inc.,* 394 F. Supp. 2d 407, 411 (D.P.R. 2005).

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 16

established Rule 12(b)(6) standard") Accordingly, the Court will examine the Cooperativa Defendants' Motion to Dismiss under the Rule 12(b)(6) standard.

Federal Rule of Civil Procedure 8(a)(2) is at the heart of a Rule 12(b)(6) motion. Rule 8(a)(2) commands that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Therefore, when considering a Rule 12(b)(6) motion, the Court must determine whether plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To make such a determination, the Court embarks on a two-step analysis. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). This analysis is a context-specific task that relies on the Court's "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

First, while the Court is called to accept Plaintiffs' well-pleaded allegations as true, such a mandate is not limitless.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 17

For "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not constitute well-pleaded allegations under the Rule 12(b)(6) framework. *Iqbal,* 556 U.S. at 678. Therefore, the Court must identify and disregard conclusory factual allegations because it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

Second, the Court examines whether the factual allegations—devoid of legal conclusions—allow "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is, in order to survive this motion, Plaintiffs must have set forth allegations that "nudge [their] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

### ii. Discussion

The crux of the argument advanced in the Cooperativa Defendants' Motion to Dismiss is that Plaintiffs' breach of fiduciary claims are a veiled attempt to advance claims for

benefits owed under the Plan. Docket No. 91 at pgs. 14-16.
And because Plaintiffs did not exhaust the administrative
remedies outlined in Section 6.9 of the Plan in order to recover
those benefits, Plaintiffs' claims against them should be
dismissed. *Id.* Plaintiffs disagree, maintaining that their
claims are statutory claims for breach of fiduciary duties
under 29 U.S.C. § 1104 and 29 U.S.C. § 1132. Docket No. 124
at pgs. 7-10. They add that, contrary to claims for benefits
owed, statutory claims for breach of fiduciary duties do not
mandate that administrative requirements be exhausted in
order for Plaintiffs to be able to bring forth their claims before
this Court. *Id.*

  While the Cooperativa Defendants do not point to the
statutory provisions that address Plaintiffs' alleged "benefits
owed" claims,[9] such claims are ordinarily raised pursuant to

---

[9]  In their briefs, Co-defendants and Plaintiffs have repeatedly failed to
point to specific statutory provisions, and their corresponding
subsections, in support of their arguments. In the future, the Parties
should be more mindful when submitting their briefs before this Court

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 19

one subsection under ERISA's civil enforcement provision, to
wit, 29 U.S.C. § 1132(a)(1)(B). That subsection is the statutory
vehicle through which a plaintiff may "recover benefits due
to him under the terms of his plan, to enforce his rights under
the terms of the plan, or to clarify his rights to future benefits
under the terms of the plan[.]" *Id.* It follows that claims
brought under that provision are contractual in nature, for
they drive at challenges regarding the terms and
interpretation of a benefits plan, not the ERISA statute itself.
*See Madera v. Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir. 2005).

ERISA breach of fiduciary duty claims, on the other hand,
can be advanced under two other subsections of ERISA's civil
enforcement provision, 29 U.S.C. § 1132(a)(2) or 29 U.S.C. §
1132(a)(3). Under § 1132(a)(2), a plaintiff may allege that plan
fiduciaries breached their fiduciary duties; however, that
subsection does not provide for individualized relief. Instead,

---

and cite to the specific provisions and subsections under which they
advance their arguments.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 20

it provides plan-wide relief given that 29 U.S.C. § 1109, which

§ 1132(a)(2) cross-references,

> makes fiduciaries liable for breach of [their
> fiduciary] duties, and specifies the remedies
> available against them: The fiduciary is
> personally liable for damages ('to make good to
> [the] plan any losses to the plan resulting from
> each such breach,' for restitution ('to restore to
> [the] plan any profits of such fiduciary which
> have been mad through use of assets of the plan
> by the fiduciary'), and for 'such other equitable
> or remedial relief as the court may deem
> appropriate,' including removal of the
> fiduciary.

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993) (quoting 29

U.S.C. § 1109).

While § 1132(a)(2) offers plan-wide relief, in *Varity Corp. v.

Howe,* 516 U.S. 489, 492 (1996), the Supreme Court held that §

1132(a)(3) allows for individual suits for breach of fiduciary

duties and serves as another vehicle to obtain equitable relief

for such violations. In analyzing the *Varity* decision, the First

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 21

Circuit noted that suits invoking § 1132(a)(3) were not without their limitations, for the *Varity* Court "limited the applicability of an individual claim for breach of fiduciary duty to those participants who are unable to avail themselves of other remedies." *Mauser v. Raytheon Co. Pension Plan for Salaried Emps.*, 239 F.3d 51, 58 (1st Cir. 2001). In *CIGNA Corp. v. Amara,* 131 S. Ct. 1866, 1879-80 (2011), the Supreme Court noted that the nature of the equitable relief provided under § 1132(a)(3) for a breach of fiduciary duties includes surcharge, estoppel, and reformation. In light of this backdrop, the Court recognizes that claims under § 1132(a)(2) and § 1132(a)(3)—contrary to claims under § 1132(a)(1)(B)—are statutory-based claims, not claims rooted in contract law inasmuch as they concern the interpretation of the ERISA statute invoked, instead of the terms of a plan.

Here, the Court agrees with Plaintiffs' assertion that what they are advancing are breach of fiduciary duties statutory claims under ERISA and not claims for benefits owed, which

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 22

would be evaluated under § 1132(a)(1)(B). In the SAC, Plaintiffs did not plead that they were wrongfully denied benefits in contravention to the terms of the Plan and the procedure for claims included in Section 6.9 of the same. Instead, Plaintiffs articulated plausible claims for breaches of fiduciary duties pursuant to ERISA.

The Cooperativa Defendants and those that joined their motion, latch on to Plaintiffs' references to not having received the "benefits they are owed under the Plan," or variations of that phrase, throughout the SAC. Docket No. 91 at pgs. 14-16. But in doing so, they have relied on a narrow reading of the SAC.  A comprehensive reading of the SAC reveals as much.

Pursuant to 29 U.S.C. § 1104(a)(1)(C), fiduciaries have a duty to diversify investments "so as to minimize the risk of large losses [to the Plan], unless under the circumstances it is clearly prudent not to do so[.]" 29 U.S.C. § 1104(a)(1)(C). Here, Plaintiffs pleaded that BPPR, as a fiduciary to the Plan

and the Plan's Trustee, was tasked with, *inter alia*, managing and investing—either as it deemed prudent or as instructed by SSLLC—Plan investments. *See* Docket No. 70-1 at ¶¶ 102, 104. Moreover, pursuant to the Trust Agreement, BPPR "had a fiduciary duty to keep the [Plan's] Trust Fund invested in securities or property that [it] deemed advisable, consistent with ERISA's requirement of prudent investment and diversification." *Id.* at ¶ 35. While carrying out those tasks, Plaintiffs claim that BPPR opted to primarily invest in Puerto Rico Bonds. *Id.* at ¶ 105. And that preference, in turn, led to the reported overconcentration of the Plan in investments that were allegedly unsuitable for the Plan. *Id.*

Plaintiffs have also set forth mirroring allegations against the Cooperativa Defendants and Ms. Alsina by stating that they also authorized investments in Puerto Rico Bonds which resulted in the purported overconcentration of the Plan. *Id.* at ¶¶ 96-98. According to Plaintiffs, those investments coupled with "other unwise investments of Plan funds," brought

about significant losses to the Plan. *Id.* at ¶ 43-46. Having
considered these allegations, the Court finds that Plaintiffs
have pleaded a plausible claim for breach of fiduciary duty
for failure to diversify.

Plaintiffs also claim in the SAC that, despite knowing
about the Plan's alleged precarious funding situation, BPPR,
the Cooperativa Defendants, and Ms. Alsina failed to take any
corrective action as to the Plan's funding predicament. *Id.* at
¶¶ 50-51, 119-121, 126. Courts have recognized "a fiduciary
duty to 'act to ensure that a plan receives all funds to which it
is entitled, so that those funds can be used on behalf of
participants and beneficiaries.'" *Diduck v. Kaszycki & Sons
Contractors, Inc.*, 874 F.2d 912, 916 (2d Cir. 1989) (quoting
*Central States, Southeast & Southwest Areas Pension Fund v.
Central Transp., Inc.*, 472 U.S. 559, 571 (1985).  Here, Plaintiffs
have pleaded that, as Plan fiduciaries, BPPR, the Cooperativa
Defendants, and Ms. Alsina contravened that duty. *Id.* at ¶¶
50-51, 54, 119-121, 126. Therefore, Plaintiffs have pleaded a

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 25

plausible claim for breach of a fiduciary duty to act to guarantee that the Plan received the funds it was entitled to receive.

After examining the SAC and the allegations advanced therein as a whole, the Court finds that the relief sought by Plaintiffs is available under the ERISA civil enforcement provisions that allow claims of breach of fiduciary duties.[10] Therefore, having determined that Plaintiffs' claims are not contractual claims for benefits owed pursuant to the Plan but rather statutory claims, the Court's inquiry shifts to whether the exhaustion of administrative remedies is required in such

---

[10] The SAC also includes claims regarding co-fiduciary liability (as to all Co-defendants), failure to select coverage under the PBGC (against the Administrative Committee), violation of reporting and disclosure requirements (against the Administrative Committee), negligence under Puerto Rico law (against Troncoso and Willis) and vicarious liability (against CSM). The Court reads the Cooperativa Defendants' Motion to Dismiss as being predicated on the notion that Plaintiffs were advancing claims under § 1132(a)(1)(B), for "benefits owed" pursuant to the Plan. The remaining claims are not framed under the scope of § 1132(a)(1)(B). So, for want of further briefing as to these claims, the Court need not, at this time, examine whether these claims cross the plausibility threshold.

instances. To date, the First Circuit has not considered this matter. But a recent decision from our District proves instructive to our inquiry.

When faced with the question regarding whether statute-based ERISA claims require the exhaustion of administrative remedies, the *Guevara Ortiz v. Unión Independiente de Empleados Telefónicos* court answered in the negative. Civ. No. 18-01729, 2021 WL 2010656, at *4 (D.P.R. May 19, 2021). The *Guevara Ortiz* court began its analysis by pointing out that, while "ERISA does not expressly require exhaustion of administrative remedies," such requirement has been read into the statute in light of 29 U.S.C. § 1133(2)'s requirement that benefit plans provide participants an administrative review process if benefits have been denied. *Id.* at *2. As such, the First Circuit has emphasized the distinction between contract-based claims and statute-based claims. *Id.* (citing *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir. 2005)).

The *Guevara Ortiz* court relied on the *Morales-Cotte* court's

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 27

observation that, "ERISA section 503, from which the exhaustion requirement is derived, speaks only of establishing review procedures for the denial of contract-based claims, so 'there is simply no statutory basis for an administrative exhaustion requirement in the context of statute-based claims.'" *Id.* at *3 (quoting *Morales-Cotte v. Cooperativa de Ahorro y Crédito Yabucoeña*, 73 F. Supp. 2d 153, 160 (D.P.R. 1999)). Following *Morales-Cotte's* line of thought, the *Guevara Ortiz* court determined that exhaustion of administrative remedies was not required for statute-based claims, for, "[a]bsent a clear directive from Congress, we abdicate our duties as federal courts when we erect barriers to justice in the name of efficiency." *Id.* at *4.

Against this backdrop, we join the *Guevara Ortiz* court's view that the reasoning employed in *Morales-Cotte* is persuasive and because we have not identified—and none of the Co-defendants have pointed to—a Congressionally mandated requirement for the exhaustion of administrative

remedies as far as ERISA statute-based claims are concerned, we follow suit in noting that exhaustion of administrative remedies for ERISA statute-based claims is not necessary.[11]

> **b. Whether RLA, the Commissioner, Mr. Moldes Rodríguez, Mr. Ortiz Rodríguez, Mr. Díaz, and UBS are Necessary Parties that Must be Joined to the Instant Action**
>> **i.  Standard of Review**

The Cooperativa Defendants also posit that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join certain individuals and entities whom they deem necessary parties under Federal Rule of Civil Procedure 19. *See* FED. R. CIV. P. 12(b)(7). In order to conduct a Rule 19 analysis, the Court employs a two-step

---

[11] While the Second Circuit has not examined this matter, courts within that "Circuit have repeatedly dispensed with any exhaustion requirement for statutory ERISA claims because 'while plan fiduciaries have expertise in interpreting plan documents, the Court has expertise in interpreting the statute.'" *Falberg v. Goldman Sachs Grp., Inc.,* Civ. No. 19-9910, 2020 WL 3893285, at *6 (S.D.N.Y. Jul. 9, 2020) (quoting *Stolarz v. Rosen,* Civ. No. 03-3083, 2005 WL 2124545, at *4 (S.D.N.Y. Aug. 26. 2005)). We also find that reasoning persuasive.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 29

approach. *United States v. San Juan Bay Marina,* 239 F.3d 400, 405 (1st Cir. 2001). Pursuant to Federal Rule of Civil Procedure 19(a), the Court must first determine whether the individual or entity is a necessary party. *Id.* If we answer in the negative, our inquiry ends there. *Delgado v. Plaza las Américas,* 139 F.3d 1, 3 n. 2 (1st Cir. 1998). But if we answer in the affirmative, we must determine whether the individual or entity is an indispensable party. *Id.* And, if joinder is not feasible the Court turns to Federal Rule of Civil Procedure 19(b), which dictates that we "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). In conducting this analysis, Rule 19 "calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." *Bacardi Intern. Ltd. v. V. Suárez & Co., Inc.,* 719 F.3d 1, 9 (1st Cir. 2013).

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 30

### ii. Discussion

### 1. RLA

In their Motion to Dismiss, the Cooperativa Defendants aver that RLA is a necessary party to this suit because, as the Plan's Sponsor, it was tasked with making the necessary contributions to the Plan. Docket No. 91 at pgs. 16-17. However, the Cooperativa Defendants argue that dismissal is warranted because the joinder of RLA to this suit is not feasible. *Id.*

In support of this proposition, the Cooperativa Defendants point to the Puerto Rico state court's liquidation order ("Liquidation Order").[12] *Id.* at pg. 17 n.3. The Liquidation Order states that "all pending or filed litigation against [RLA], [must] be dismissed and referred to the administrative forum for the process of liquidation of [RLA]." Docket No. 91-1 at ¶ 30. The Court, however, finds that RLA

---

[12] The Court takes judicial notice of the Liquidation Order.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 31

is not a necessary party at this juncture in light of the allegations set forth in the SAC. As highlighted by Plaintiffs in their Opposition to the Cooperativa Defendants' Motion to Dismiss, the SAC does not include allegations regarding an alleged breach of fiduciary duty by RLA and Plaintiffs' SAC, instead, alleges, *inter alia*, that RLA's fiduciary duties pursuant to ERISA were delegated to the Administrative Committee. Docket No. 124 at pg. 5 n.15.

### 2. The Commissioner and Mr. Moldes Rodríguez

The Cooperativa Defendants next sustain that the Commissioner and Mr. Moldes Rodríguez are indispensable parties due to their purported mismanagement of the Plan's assets during RLA's rehabilitation and subsequent liquidation, which is still ongoing. Docket No. 91 at pgs. 17-19. However, the Cooperativa Defendants argue that their joinder is not possible pursuant to Article 40.210(1) of the Puerto Rico Insurance Code, P.R. LAWS ANN. tit. 26, § 4021(1), which precludes the filing of a suit against the Commissioner

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 32

and Mr. Moldes Rodríguez as liquidators of RLA. *Id.* Further, in their supplemental motion, the Cooperativa Defendants informed the Court that the Puerto Rico Court of Appeals ("PRCA") authorized CSM to intervene in the liquidation proceedings in order for the state court to ascertain whether the Plan was—or was not—an asset of RLA. Docket No. 147 at pgs. 2-3. The PRCA's decision also stated that if it was decided that the Plan was not an asset of RLA, CSM could raise its claims against the Commissioner and Mr. Moldes Rodríguez by way of an independent action. *Id.* at pgs. 3-4.

As Plaintiffs point out, the allegations in the SAC focus on the Plan's underfunding foibles. RLA entered into a rehabilitation process on September 28, 2018 and the Plan was terminated on December 31, 2018. *See* Docket No. 70-1 at ¶¶ 64, 67. The SAC does not include allegations showing that the Commissioner and Mr. Moldes Rodríguez's actions in between the time that RLA entered into rehabilitation and the Plan's termination contributed to the Plan's underfunding

status. Accordingly, the Court finds that the Commissioner and Mr. Moldes Rodríguez are not necessary parties at this time.

### 3. Mr. Ortiz Rodríguez

The Cooperativa Defendants identify Mr. Ortiz Rodríguez as the former Vice-President of Finances and Human Resources at RLA. Docket No. 91 at pgs. 19-20. They allege that Mr. Ortiz Rodríguez is a necessary party because he formalized the Deed of Trust for the Plan and played a significant role in the drafting of the Plan's Investment Policy. *Id.* The Cooperativa Defendants, however, argue that Mr. Ortiz Rodríguez cannot be joined because the statute of limitations to file an ERISA action has lapsed. *Id.* at pg. 20. Plaintiffs counter that Mr. Ortiz Rodríguez retired from RLA at some point in August 2012 and the allegations in the SAC focus on investments that were made after he left RLA. Docket No. 124 at pg. 5. The Court agrees with Plaintiffs and finds that, at this time, and in view of the allegations set forth

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 34

in the SAC, Mr. Ortiz Rodríguez is not a necessary party. Moreover, the statute of limitations argument is, in any event, a factual inquiry that would not be solved at this stage.

### 4. Mr. Díaz

The Cooperativa Defendants argue that while working for SSLLC, Mr. Díaz managed the Plan's investment portfolio up until the point that SSLLC ceased its functions as the Plan's Investment Manager. Docket No. 91 at pg. 20. In light of his role with SSLLC, the Cooperativa Defendants reason that Mr. Díaz was aware of the Plan's purported underfunded status yet failed to alert RLA—or the Administrative Committee— and take any corrective action regarding this matter. *Id.* Likewise, there are no allegations in the SAC regarding Mr. Díaz's purported conduct. As such, at this time, the Court does not find that Mr. Díaz is a necessary party.

### 5. UBS

The Cooperativa Defendants next argue that UBS is a necessary party to this suit because once SSLLC ceased its

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 35

functions as the Plan's Investment Manager at some point in 2015, UBS stepped in as a financial adviser to the Plan. Docket No. 91 at pgs. 21-22. The Cooperativa Defendants, however, maintain that UBS cannot be joined and that dismissal is warranted because the consulting services agreement governing the relationship between RLA and UBS provides for all controversies regarding services rendered by UBS to be resolved by arbitration. *Id.* at 22.

Notwithstanding this argument, the Court notes that the SAC is devoid of any factual underpinnings that would shed light on UBS's purported involvement as far as Plaintiffs' claims are concerned. Accordingly, the Court finds that in view of the allegations advanced in the SAC, UBS is not a necessary party at this time.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 36

## B.  SSLLC's Motion to Dismiss Under Rule 12(b)(6)[13]

### a.  Discussion

#### i.  Whether SSLLC Served as the Plan's Investment Manager

The overarching argument advanced by SSLLC in its Motion to Dismiss is that dismissal is warranted because the SAC is riddled with legal conclusions which are insufficient to establish that it served as the Plan's Investment Manager. Docket No. 101 at pgs. 7, 12-13. In support of that proposition, SSLLC argues that to satisfy the definition of an investment manager pursuant to 29 U.S.C. § 1002(38), Plaintiffs were tasked with pleading that it agreed in writing to serve in a fiduciary capacity with respect to the Plan and that it was a registered investment advisor under the Investment Advisors Act of 1940 ("IAA") or meet certain exceptions to § 1002(38).

---

[13] Being as SSLLC's Motion to Dismiss is advanced pursuant to Rule 12(b)(6), the Court hereby incorporates the standard of review for this rule as espoused in this Omnibus Opinion and Order when addressing the Cooperativa Defendants' Motion to Dismiss.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 37

*Id.* at pg. 12.

In the SAC, Plaintiffs state that the Plan's Trust Agreement provided for the appointment of an investment manager. Docket No. 70-1 at ¶ 36. According to Plaintiffs, the Plan's Trust Agreement specifically stated that an investment manager had to be a registered investment adviser under the IAA and must have acknowledged in writing that it was a fiduciary with respect to the Plan. *Id.* Those requirements track § 1002(38)'s requirements to satisfy the definition of an investment manager under ERISA.[14] Therefore, reading the SAC in the light most favorable to Plaintiffs, a plausible inference can be made that in view of the requirements for the appointment of an investment manager and because SSLLC was purportedly appointed to serve in that capacity with respect to the Plan, *see* Docket No. 70-1 at ¶ 37, SSLLC was an

---

[14] Section § 1002(38) also indicates that an investment manager "has the power to manage, acquire, or dispose of any asset of a plan[.]" In their SAC, Plaintiffs alleged that SSLLC held that type of control over the Plan. *See* Docket No. 70-1 at ¶¶ 38-39.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 38

ERISA fiduciary with respect to the Plan.  Moreover, whether

SSLLC in fact signed—or did not sign—a document

acknowledging its status as a fiduciary with respect to the

Plan is a factual inquiry that can be ascertained during the

discovery process.

### ii. Whether Plaintiffs Advanced a Plausible Breach of Fiduciary Duty Claim for Alleged Overconcentration

SSLLC next argues that dismissal is warranted because

Plaintiffs have failed to state a claim for relief regarding its

alleged violation of § 1104(a)(1)(C). Docket No. 101 at pg. 15.

In support of this argument, SSLLC relies on the Plan's Form

5500 for the years 2013-2015 to challenge Plaintiffs' assertion

that the Plan was overconcentrated in Puerto Rico Bonds. *Id.*

SSLLC also refers to the Plan's Investment Policy to highlight

that its decision to invest in those bonds was not imprudent

because the investment of Plan assets in "Obligations of the

Commonwealth of Puerto Rico" were sanctioned pursuant to

the Plan's Investment Policy. *Id.* at pg. 16.

For their part, Plaintiffs posit that there is no specific percentage required to show overconcentration. Docket No. 125 at pg. 8. They add that amongst the considerations that must be taken to evaluate whether a failure to diversify has materialized is whether a considerable amount of a plan's assets have been placed in the same "geographical" basket— in this case, Puerto Rico. *Id.* at pgs. 9-10. Moreover, Plaintiffs reject SSLLC's reliance on the Forms 5500 at this stage of the proceedings. They also assert that it was imprudent for SSLLC to make and hold investments in "obligations of the Commonwealth of Puerto Rico," simply because the Plan's Investment Policy contemplated such investments. *Id.* at pgs. 10-12.

In its Reply, SSLLC disputes Plaintiffs' interpretations of the Forms 5500 and points out that the same rely on the concentration of those bonds at the time that they were purchased. Docket No. 137 at pgs. 5-6.  According to SSLLC, that argument raises a statute of limitations issue, for if such

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 40

were the case, Plaintiffs' claims would be time barred under ERISA's six-year statute of repose under 29 U.S.C. § 1113. *Id.* at 6-7.[15]

As noted, *supra,* § 1104(a)(1)(C) imposes a duty on plan fiduciaries to diversify plan investments to avoid large losses to the plan, the exception being if, provided the circumstances, diversification would be imprudent. 29 U.S.C. § 1104 (a)(1)(C). "No statute or regulation specifies what constitutes 'diversifying' plan investments, but the legislative history provides this guidance:

> The degree of investment concentration that would violate this requirement to diversify cannot be stated as a fixed percentage, because a fiduciary must consider the facts and circumstances of each case. The factors to be considered include (1) the purpose of the plan; (2) the amount of the plan assets; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds or

---

[15] SSLLC briefly alluded to this statute of limitations argument at Docket No. 101 n. 8.

> shares of stock or otherwise; (5) distribution as
> to geographical location; (6) distribution as to
> industries; [and] (7) the dates of maturity.

*Metzler v. Graham,* 112 F.3d 207, 209 (5th Cir. 1997) (quoting
H.R. Rep. No. 1280, 93d Cong., 2d Sess. (1974), *reprinted in*
1974 U.S. Code Cong. & Admin. News 5038, 5084-85).

The majority of Plaintiffs' and SSLLC's arguments
regarding the prudence of Plan investments focus on the
interpretation of the Forms 5500 which SSLLC attached to its
Motion to Dismiss. These forms have raised considerable
factual issues which, keeping with Congressional intent
regarding § 1104(a)(1)(C), should not be resolved at the
motion to dismiss stage, particularly because SSLLC has
relied on them to rebuff Plaintiffs' factual allegations
regarding the Plan's investments and the levels of
overconcentration alleged. Such reliance is inappropriate at
this juncture.

Here, Plaintiffs' SAC includes allegations to the effect that

SSLLC decided to invest in Puerto Rico Bonds and/or to direct BPPR to invest in those bonds—therefore causing the Plan's purported overconcentration—even though those bonds were reportedly "unsuitable for investment of retirement funds." Docket No. 70-1 at ¶¶ 112-113. Further, the SAC specifies that that SSLLC's investment in Puerto Rico bonds, the subsequent loss in value of those bonds, and its failure to diversify, in addition to "other unwise investments," contributed to a large loss to the Plan. *Id.* at ¶¶ 44-46, 112-113. These allegations lay out a plausible breach of fiduciary duties claim for failure to diversify.

Additionally, for want of full briefing on the matter and because the record is not sufficiently developed at this stage, the Court is not in a position to entertain SSLLC's argument concerning the possibility that Plaintiffs' claim is time-barred. Accordingly, dismissal of Plaintiffs' breach of fiduciary duties for failure to diversify claim at this stage would be premature.

### iii. Whether Plaintiffs Advanced a Plausible Breach of Fiduciary Duty Claim Regarding the Plan's Purported Underfunding

SSLLC also seeks dismissal of the SAC on the ground that matters related to a plan's funding are settlor functions, not fiduciary functions. *Id.* at pgs. 17-18. In their Opposition, Plaintiffs clarify that they did not advance in their SAC a claim alleging that SSLLC was tasked with funding the Plan. Docket No. 125 at pg. 13. Instead, they contend that SSLLC had a fiduciary duty to ensure that the Plan received the funds that it was entitled to which would ensure that it was adequately funded. *Id.* at pgs. 13-14.

As noted in our discussion regarding the Cooperativa Defendants' Motion to Dismiss, *supra,* Plan fiduciaries have a duty to act and take affirmative steps so that the Plan obtains the funds that it was supposed to receive. *See Diduck,* 874 F.2d at 916. Here, the SAC includes allegations noting that, even though SSLLC was aware of the Plan's underfunding, due in

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 44

part to its and BPPR's investment decisions, it failed to take any corrective action and did not ensure that the Plan received the funds that it was supposed to receive which in turn would have allowed it to be adequately funded. Docket No. 70-1 at ¶¶ 52, 54, 132.[16] As such, Plaintiffs have pleaded a plausible claim for relief and therefore dismissal is not

---

[16] In its Motion to Dismiss, SSLLC cites to *Cress v. Wilson*, Civ. No. 06-2717, 2008 WL 5397580, at *8-11 (S.D.N.Y. Dec. 29, 2008), in support of its argument that Plaintiffs failed to, *inter alia*, identify the specific funding requirements pursuant to ERISA that were allegedly disregarded. Docket No. 101 at pg. 18. According to SSLLC and its reading of *Cress*, pinpointing to and establishing a specific violation of ERISA's minimum funding requirements is the "exclusive way" to raise a claim tied to a plan's alleged underfunding status and contribution delinquencies. *Id.* at pg. 18. But *Cress* can be distinguished here considering the procedural juncture that this case is in. For starters, *Cress* was resolved at the summary judgment stage after the parties were allowed to conduct discovery into the plan's funding status. And a review of the SAC shows that Plaintiffs alleged that the Plan was underfunded precisely because ERISA's funding requirements were not met. *See* Docket No. 70 at ¶ 46. Moreover, here, Plaintiffs have alleged that SSLLC breached its fiduciary when it reportedly failed to ensure that the Plan received the funds that it was supposed to receive. While such allegation is predicated on whether the Plan was—or was not—adequately funded, the Court finds that such a specific showing as requested by SSLLC is not necessary in a Rule 12(b)(6) motion, but rather once discovery has ensued.

warranted at this stage.

### iv. Whether Plaintiffs Advanced a Plausible Claim for Co-fiduciary Liability

SSLLC next posits that Plaintiffs have failed to state a plausible claim for Co-fiduciary liability. Docket No. 101 at pgs. 19-20.[17] Pursuant to 29 U.S.C. § 1105(a), "[c]o-fiduciary liability inheres if a fiduciary knowingly participates in or conceals another fiduciary's breach, enables such other to commit a breach, or learns about such a breach and fails to make reasonable efforts to remedy it." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18-19 (1st Cir. 1998). Here, Plaintiffs' SAC contains allegations regarding the purported fiduciary breaches committed by BPPR regarding the failure to diversify and failure to act so that the Plan would receive all

---

[17] The bulk of SSLLC's arguments regarding Plaintiffs' failure to state a co-fiduciary liability claim hinge on its understanding that Plaintiffs did not plead that it was a fiduciary with respect to the Plan. In Section II(B)(a)(i) of this Omnibus Opinion and Order, the Court determined that in view of the facts set forth in the SAC, a plausible inference could be made that SSLLC was a fiduciary with respect to the Plan.

VEGA ORTIZ, ET AL. v. COOPERATIVA DE
SEGUROS MÚLTIPLES DE PUERTO RICO, ET
AL.

Page 46

the funds that it was entitled to. The plausibility of those claims was discussed in Section II(A)(a)(ii) of this Omnibus Opinion and Order and we need not repeat them. Moreover, Plaintiffs also averred that SSLLC participated in and therefore knew about those same breaches of fiduciary duty. The plausibility of those claims was discussed in Sections II(B)(a)(ii)-(iii) of this Omnibus Opinion and Order. Therefore, Plaintiffs have set forth a plausible claim for Co-fiduciary liability against SSLLC.

### C. Willis's Motion to Dismiss Under Rule 12(b)(6)[18]

#### a. Discussion

Willis's Motion to Dismiss, which Troncoso joined, *see* Docket Nos. 156-157, stands for the proposition that any malpractice state law claim against them is preempted by

---

[18] Because Willis's Motion to Dismiss is advanced pursuant to Rule 12(b)(6), the Court hereby incorporates the standard of review for this rule that was already espoused at the beginning of this Omnibus Opinion and Order. *See also supra* note 13.

ERISA and should therefore be dismissed. *See* Docket No.
141.[19] Plaintiffs disagree. Docket No. 143 at pgs. 4-7.

ERISA's § 1144(a) preempts "any and all State laws insofar
as they may now or hereafter relate to any employee benefit
plan . . . ." 29 U.S.C. § 1144(a). Here, the briefs before this
Court present scattershot arguments regarding the
preemption matter. The Court does not find that this
argument is fully developed at this juncture and will therefore
**DENY** Willis's Motion to Dismiss.[20] Willis and Troncoso may

---

[19] Willis's Motion to Dismiss also stated that dismissal was warranted
because the actuarial firms (Troncoso and Willis) were not ERISA
fiduciaries with respect to the Plan. In their Opposition, Plaintiffs
recognize that Troncoso and Willis are not ERISA fiduciaries with respect
to the Plan. Docket No. 143 at pgs. 4-5. Therefore, because Willis, Troncoso
and Plaintiffs are on the same page about the actuarial firms' non-
fiduciary status under ERISA, and the SAC does not include allegations to
the effect that Troncoso and Willis were either named or functional
fiduciaries with respect to the Plan, the Court need not explore this
argument at this time.

[20] For example, prior to delving into a preemption analysis, as a threshold
matter, the Court finds it necessary for Plaintiffs and Troncoso and Willis
to address whether Plaintiff can advance a state negligence claim against
the actuarial firms on behalf of the Plan. Moreover, the Court

raise this matter at a later stage.

### III. Conclusion

In light of the above, the Court hereby **DENIES** the motions to dismiss at Docket Number 91, 100, and 141 and **NOTES** the motion at Docket Number 147.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of November 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

acknowledges that in the Reply, Willis argues that, in any event, even the state law claims are not preempted, Plaintiffs failed to satisfy the elements necessary to advance a malpractice claim under Puerto Rico law. Docket No. 146. Willis, however, relies on the elements necessary to set forth a legal malpractice claim under Puerto Rico law. But here, even though Plaintiffs have not indicated that they are advancing a legal malpractice claim, Willis never explained why it relied on the elements necessary to advance a legal malpractice claim.