## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| **Joel Vega Ortiz, Ernie Rivera Diaz, Gretchen Montalvo Espinosa, Jamilh M. Elias, and Maribella Ramos Prieta, individually and on behalf of all those similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**Cooperativa de Seguros Multiples de Puerto Rico; Banco Popular de Puerto Rico; Ruth E. Gomez Arias; Luis J. Vilaró Suárez; Luisana Rincon; Aleida Alsina; John Doe(s); Santander Securities, LLC, Troncoso Consulting Group, Inc.; Willis Towers Watson US, LLC; and ABC Insurance Companies**<br><br>Defendants | Case No. 19-cv-2056<br><br>**<u>CLASS ACTION COMPLAINT</u>** |

## <u>THIRD AMENDED COMPLAINT</u>

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Joel Vega Ortiz, Gretchen Montalvo Espinosa, Jamilh M. Elias, and Maribella Ramos Prieta, individually and on behalf of all those similarly situated, and file this Third Amended Complaint against Defendants, Cooperativa de Seguros Multiples de Puerto Rico, Banco Popular de Puerto Rico, Ruth E. Gomez Arias, Luis J. Vilaró Suárez, Luisana Rincon, Aleida Alsina, John Doe(s), Santander Securities, LLC, Troncoso Consulting Group, Inc., Willis Towers Watson US, LLC, and Liberty Mutual Insurance Company for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and for negligence.

In support of their Third Amended Complaint, Plaintiffs aver as follows:

1510428v.2

## PARTIES

1.  Plaintiff Joel Vega Ortiz ("Vega") is an adult resident of the Commonwealth of Puerto Rico. Ortiz started employment for Real Legacy Assurance Company, Inc. ("RLA") and/or its predecessor-in-interest on or about July 26, 2001 and was employed as a full-time employee of RLA and/or its predecessor-in-interest for a period of over seventeen (17) years.  Plaintiff Ortiz is a "participant" in the Real Legacy Assurance Plan (the "Plan") as that term is defined in the Plan and by ERISA.  His rights under the Plan are vested.

2.  Plaintiff Gretchen Montalvo Espinosa ("Montalvo") is an adult resident of the Commonwealth of Puerto Rico. Montalvo started employment for RLA and/or its predecessor in interest on or about January 12, 1990 and was a full-time employee of RLA and/or its predecessor in interest for over twenty-eight (28) years. Plaintiff Montalvo is a "participant" in the Plan as that term is defined in the Plan and by ERISA. Her rights under the Plan are vested.

3.  Plaintiff Jamilh M. Elias ("Elias") is an adult resident of the Commonwealth of Puerto Rico. Elias started employment for RLA and/or its predecessor in interest on or about January 5, 1998 and was a full-time employee of RLA and/or its predecessor in interest for over twenty (20) years. Plaintiff Elias is a "participant" in the Plan as that term is defined in the Plan and by ERISA. Her rights under the Plan are vested.

4.  Plaintiff Maribella Ramos Prieta ("Ramos") is an adult resident of the Commonwealth of Puerto Rico. Ramos started employment for RLA and/or its predecessor in interest on or about September 10, 2007, and was a full-time employee of RLA and/or its predecessor in interest for over nine (9) years. Plaintiff Ramos is a "participant" in the Plan as that term is defined in the Plan and by ERISA. Her rights in the Plan are vested. Collectively, Vega, Rivera, Montalvo, Elias, and Ramos are referred to herein as "Plaintiffs."

1510428v.2

5. Defendant Cooperativa de Seguros Multiples de Puerto Rico ("Cooperativa") is a cooperative organized under Chapter 34 of the Puerto Rico Code of Insurance. Cooperativa is the 100% owner of RLA.

6. Defendant Banco Popular de Puerto Rico ("Banco Popular") is a banking institution organized under the laws of Puerto Rico. Banco Popular is the Trustee of the Plan, as that term is defined in the Plan, the Plan's Trust Agreement, and ERISA.

7. Defendant Ruth E. Gomez Arias ("Gomez Arias") is an adult resident of the Commonwealth of Puerto Rico. Gomez Arias is the Secretary of the Board of Directors of Cooperativa and, upon information and belief, is a member of the Administrative Committee appointed by the Board of Directors of RLA to act as Plan Administrator for the Plan and has signed Plan documents in that capacity. Based upon information and belief, at all relevant times, Gomez Arias also served as corporate secretary of RLA.

8. Defendant Luis J. Vilaró Suárez ("Vilaró Suárez") is an adult resident of the Commonwealth of Puerto Rico. Vilaró Suárez is the Vice President of Administration for Cooperativa and, upon information and belief, is a member of the Administrative Committee appointed by the Board of Directors of RLA to act as Plan Administrator for the Plan and has signed Plan documents in that capacity.

9. Defendant Luisana Rincon ("Rincon") is an adult resident of the Commonwealth of Puerto Rico. Rincon is the Director of Human Resources for Cooperativa and, upon information and belief, is a member of the Administrative Committee appointed by the Board of Directors to act as Plan Administrator of the Plan and has signed Plan documents in that capacity.

10. Defendant Aleida Alsina ("Alsina") is an adult resident of the Commonwealth of Puerto Rico. Alsina was Director of Finance of RLA through March 27, 2017, and, upon information and

1510428v.2

belief, was a member of the Administrative Committee appointed by the Board of Directors to act as Plan Administrator of the Plan and has signed Plan documents in that capacity.

11. Defendant John Doe(s) (denominated with a fictitious name because their real name(s) is unknown) is or was one or more member(s) of the Administrative Committee appointed by the Board of Directors to act as Plan Administrator of the Plan, which is required to be composed of at least five members.

12. Defendants Gomez Arias, Vilaró Suárez, Rincon, Alsina, and John Doe(s) are collectively referenced as the "Plan Administrator Defendants" throughout this Complaint.

13. Defendant Santander Securities, LLC is a limited liability company formed pursuant to the Puerto Rico General Corporation Law with its principal place of business in Massachusetts. Santander Securities is a registered broker dealer with the Financial Industry Regulatory Authority ("FINRA").

14. Defendant Troncoso Consulting Group, Inc. ("Troncoso") is a Delaware closed corporation whose agent for service of process is Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, Delaware, 19958.  Troncoso provided actuarial services for the Plan in Puerto Rico from at least 2008 through October 2016.

15. Defendant Willis Towers Watson US, LLC ("Towers Watson") is a Delaware limited liability company, and based upon information and belief is the successor to Towers Watson Delaware, Inc., a Delaware corporation.  Towers Watson's agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington DE, 19808. Towers Watson provided actuarial services for the Plan in Puerto Rico from at least January 2016 through February 2018.

1510428v.2

16. Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is a Massachusetts insurer registered to do business in Puerto Rico, headquartered in Boston, Massachusetts. Liberty Mutual may be served through the Commissioner of Insurance of Puerto Rico. Upon information and belief, Liberty Mutual issued one or more policies which provide coverage for one or more of the causes of action stated in this Third Amended Complaint.

## VENUE AND JURISDICTION

17. Venue is proper in this District because the Plan at issue was administered within this District, some or all of the violations of ERISA took place in this District, all of the Defendants reside or can be found in this District, and Plaintiffs' causes of action arose in this District. 29 U.S.C. § 1132(e)(2).

18. This Court has jurisdiction over this matter because it is a civil matter arising under the laws of the United States. Further, ERISA specifically provides that courts of the United States shall have jurisdiction over civil actions brought by ERISA participants and beneficiaries. 29 U.S.C. § 1132(e)(1).

19. This Court has supplemental jurisdiction over Plaintiffs' state law claims for actuarial negligence pursuant to 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

20. On July 1, 1986, Royal Insurance Company of Puerto Rico, Inc., predecessor in interest to RLA, established the Royal Insurance Company of Puerto Rico, Inc. Employees Retirement Plan.

21. As a result of certain business transactions, RLA became the sponsor of the Royal Insurance Company of Puerto Rico, Inc. Employees Retirement Plan as of July 2004.

22. Cooperativa acquired 100% of RLA on October 8, 2003.

1510428v.2

23. Upon information and belief, over time, Cooperativa assumed almost complete direction and control over RLA's affairs. This control included directing Cooperativa employees to participate in administration of the RLA Plan.

24. Further and specifically, upon information and belief, over time Cooperativa assumed complete control over RLA's finances. In fact, in 2017, Cooperativa agreed to cause RLA to maintain a minimum capital surplus of at least $35.5 million. This financial control, upon information and belief, included authority and control over the management and administration of the RLA Plan.

25. Effective January 1, 2006, the Plan was revised to change the name to Real Legacy Assurance Plan and to reflect certain other amendments.  In connection with that revision, RLA stated that "It is the intention of the Corporation that the Plan satisfies the applicable provisions of ERISA, as well as the provisions of the PR Code."

26. Employees of RLA and/or its predecessor who were at least 21 years of age became participants in the Plan after six months of service to RLA and/or its predecessor. Participants became 100% vested in their accrued benefits under the Plan after five years of service to RLA and/or its predecessor.

27. The Plan was funded entirely by contributions made by RLA and/or its predecessor.

28. The Plan, as revised on January 1, 2006, provides that it may be administered by an administrative committee appointed by the Board of Directors of RLA which acts on behalf of RLA as Plan Administrator (the "Administrative Committee"). Based upon information and belief, Defendants Ruth E. Gomez Arias, Luis J. Vilaró Suárez, Luisana Rincon, Aleida Alsina, and John Doe(s) were members of the Administrative Committee.  Members of the Administrative Committee can be, but are not required to be, officers, employees, or directors of RLA.

1510428v.2

29. The Administrative Committee has various authorities and duties, including the duty to comply with the provisions of ERISA.

30. The Administrative Committee also has the right to establish an investment policy for the Plan's Trust Fund.

31. The Administrative Committee further has the right to select an actuary and/or an actuarial firm to provide actuarial services in connection with the administration of the Plan.

32. The Plan also contemplates the appointment of a Trustee, which can be any bank, insurance company, person, or entity appointed by RLA's Board of Directors that keeps the Trust Fund where contributions are deposited.

33. On May 22, 2007, a Trust Agreement was executed in connection with the Plan. That Agreement noted that pursuant to certain resolutions of the Board of Directors of RLA, Banco Popular had been appointed successor Trustee for the Plan.

34. Pursuant to the 2007 Trust Agreement, Banco Popular had a fiduciary duty to keep the Trust Fund invested in securities or property that Banco Popular deemed advisable, consistent with ERISA's requirement of prudent investment and diversification.

35. The Trust Agreement also contemplates the potential appointment of an Investment Manager, defined as "[a]ny person, firm or corporation who is a registered investment adviser under the Investment Advisers Act of 1940 …." For any Investment Manager appointed pursuant to the Trust Agreement, written acknowledgment that the Investment Manager is an ERISA fiduciary with respect to the Plan is required.

36. Upon information and belief, Santander Securities was appointed Investment Manager pursuant to the Plan's Trust Agreement from at least 2007 through at least 2015.

37. Upon information and belief, as Investment Manager, Santander Securities had the authority to deliver instructions to the Plan Trustee, in this case Banco Popular, as to how the Trustee should carry out its investment responsibilities.

38. The Administrative Committee, as Plan Administrator, also had the authority to give written instructions to Banco Popular, including by establishing an Investment Policy, to direct Banco Popular how to administer, invest, and reinvest the funds. Based upon information and belief, no written instructions from the Plan Administrator directed Banco Popular as to the specific investments in which the Plan should be invested. Instead, upon information and belief, Banco Popular, on its own or with the assistance of or at the direction of Santander Securities, invested Plan assets as Banco Popular deemed advisable.

39. Banco Popular was not permitted to violate its fiduciary duties or ERISA's requirements based on action or inaction pursuant to requests or direction by the Administrative Committee or any Investment Manager.

***Investment in Puerto Rico Bonds***

40. By year-end 2014, as much as 25% of the Plan's assets, or more than $4.1 million, were invested in closed end bonds' funds and/or other bonds of several instrumentalities and public corporations of the Commonwealth of Puerto Rico ("Puerto Rico Bonds").

41. Puerto Rico Bonds were once popular investments because they provided Puerto Rico residents with various tax advantages, including exemption from U.S. estate and gift taxes and a "triple tax benefit." A "triple tax benefit" means that Puerto Rico Bonds are exempt from local, state, and federal taxation. These tax benefits were of no value to the Plan, however, because any interest earned on the Plan's assets was tax exempt.

1510428v.2

42. The Plan continued to be overconcentrated in Puerto Rico Bonds through at least 2014. As of December 31, 2014, as much as twenty-five percent of the Plan's assets were invested in Puerto Rico Bonds. One hundred percent of the Plan's municipal bond investments were in Puerto Rico Bonds as of this date.

43. By 2014, Puerto Rico Bonds had suffered massive losses in market value. On February 4, 2014, a rating agency cut Puerto Rico general obligation debt ratings to "junk" status. The Plan therefore lost millions of dollars on these assets during this period.

44. As a result of these losses and of other unwise investments of Plan funds, financial statements filed by RLA for the year end 2015 show that the Plan was underfunded by many millions of dollars.

### *Failure to adequately fund the Plan*

45. The Plan's underfunding began even earlier than 2015. By 2014, financial statements showed that the Plan was significantly underfunded, such that it lacked assets sufficient to meet its funding targets under ERISA and to make the payments promised to employees such as Plaintiffs.

46. In January 2012, according to actuarial reports prepared by Troncoso, the plan was 98% funded. By January 2014, those same reports reflected that the Plan was only 85% funded. By January 2016, those reports reflected that the Plan was only 81% funded.

47. Based upon information and belief, including recent reports from Abarca & Associates PSC, the Plan's actual funding at present is only between 60-70%.

48. Because the Plan was underfunded, RLA, as the employer sponsor of the Plan, was obligated to make additional contributions to amortize this shortfall under ERISA and its regulations.

1510428v.2

49. Upon information and belief, the Plan Administrator Defendants failed to cause RLA to make the required contributions to ensure the Plan's solvency.

50. Further, upon information and belief, Banco Popular, as Trustee, was aware the Plan was underfunded due to the investment actions and/or decisions of Banco Popular and/or Santander Securities, with whose assistance or at whose direction Banco Popular was acting. Nevertheless, Banco Popular did not take action to make investment actions and/or decisions that would have more adequately funded the Plan and did nothing to cause the Plan Administrator Defendants to provide additional funds to the Plan.

51. Further, upon information and belief, Santander Securities was aware the Plan was underfunded due to Santander Securities' own investment decisions and/or Banco Popular's investment decisions with Santander Securities' assistance or at Santander Securities' direction. Nevertheless, Santander Securities did not take action to make investment decisions that would have more adequately funded the Plan, and they did nothing to cause the Plan Administrator Defendants to provide additional funds to the Plan.

52. Indeed, as the amount of the Plan's underfunding rapidly increased by millions of dollars up through 2016, RLA's regular annual contributions to the Plan did not increase. Although they were well aware that the Plan's funding was in jeopardy, the Plan Administrator Defendants breached their obligations to the Plan to ensure that the employer made sufficient contributions to keep the Plan solvent.

53. Further, as the amount of the Plan's underfunding rapidly increased by millions of dollars up through 2016, Banco Popular and Santander Securities did nothing to cause the Plan Administrator Defendants to increase the Plan's funding.

1510428v.2

54. Further, as part of the calculation of the funding target, the Plan used assumptions about the interest rate that would be earned by its assets over the life of the Plan. Upon information and belief, the assumed interest rate far exceeded the interest rates of the largely fixed rate assets that made up the Plan's investments. This incorrect assumption of a higher interest rate on investments than could reasonably have been expected to be achieved caused the funding target to be artificially low.

55. The Plan Administrator Defendants knew or should have known that the funding target significantly understated the Plan's liabilities, and that RLA would need to make larger contributions to ensure the Plan's solvency. Nonetheless, the Plan Administrator Defendants failed to account for this discrepancy, and thereby breached their obligations to the Plan to ensure that the employer made sufficient contributions from 2014 on to keep the Plan solvent.

56. As a result of the Plan Administrator Defendants' failure to cause RLA to make the required contributions in light of both the increasing underfunding and the incorrect interest rate assumption, the Plan remained severely underfunded by many millions of dollars.

57. Further, and alternatively, Troncoso and Towers Watson provided actuarial services and produced actuarial reports that negligently understated the amount by which the Plan was underfunded. The actuarial reports prepared by Troncoso reported that the Plan was 81.8% funded as of January 2016.

58. Upon information and belief, Towers Watson provided actuarial services for the Plan starting in January 2016. The actuarial report prepared by Towers Watson reported that the Plan was 81.0% funded as of January 2017.

59. Upon information and belief, however, at the time that the Plan was terminated, the Plan was in fact only 60% or 70% funded.

60. Troncoso and Towers Watson, as professional actuaries capable of reading and understanding financial documents, knew or should have known that their reports understated the amount by which the Plan was underfunded.

61. Upon information and belief, as a result of Troncoso's and Towers Watson's negligence, RLA made smaller contributions than were required by ERISA, which left the Plan severely underfunded by many millions of dollars.

***Plan freezing and termination***

62. Upon information and belief, as a result of the above-referenced underfunding, the Plan was frozen effective December 31, 2015, such that no further benefits accrued after that date. Nevertheless, the Plan still lacked sufficient assets to pay the benefits that accrued prior to the freeze, and as of year-end 2017, the Plan was still underfunded by many millions of dollars.

63. Effective September 28, 2018, RLA entered into a rehabilitation process with the Office of the Insurance Commissioner.

64.  Effective January 18, 2019, RLA entered into a liquidation process.

65. According to information provided to Plan participants after April 2019, during the rehabilitation process the Administrative Committee and Banco Popular learned that the Plan was underfunded; that is, its assets were not enough to pay the benefits owed to all Plan participants. Upon information and belief, the Administrative Committee and Banco Popular knew or should have known of the Plan's underfunding long before April 2019.

66. Participants were also notified that RLA had terminated the Plan, effective December 31, 2018.

67. By letter dated October 18, 2019, RLA notified participants that only three categories of participants would ever receive benefits from the Plan's assets: (1) participants who were receiving

1510428v.2

a retirement benefit as of January 1, 2016; (2) active participants who qualified to receive a retirement benefit as of January 1, 2016; and (3) terminated participants who qualified to receive a retirement benefit as of January 1, 2016.

68. Even those participants who will receive benefits, however, will only receive around 65% of what their pension was or would have been under the Plan.

69. The October 18, 2019 letter to participants informed them that the Plan requires at least $35,000,000 in assets to be fully funded—nearly the exact amount that Cooperativa agreed to ensure RLA would have in surplus capital.

70. Thus, as a result of the Plan's underfunding and ultimate termination, some participants, including some Class members, will only receive a fraction of the benefits they expected to receive upon retirement, even considering the reduced amount those participants were to receive in light of the Plan being frozen, and despite being fully vested in the Plan. Other participants, including Plaintiffs and other Class members who were terminated or active employees fully vested in their benefits under the Plan but who were not eligible to receive benefits on January 1, 2016, will receive nothing at all.

### *No PBGC insurance is available.*

71. The Plan is a defined benefit plan. Ordinarily, such plans are insured by the Pension Benefit Guaranty Corporation (the "PBGC"), a government agency which ensures that plan beneficiaries do not suffer a loss of benefits if defined benefit plans are terminated without sufficient funding. Defined benefit plans pay annual premiums to the PBGC, and the PBGC will pay the benefits owed under a defined benefit plan up to certain amount if the plan is terminated without sufficient funds to pay the benefits accrued under it.

1510428v.2

72. Unlike most private employer defined benefit plans in the United States, private employer defined benefit plans in Puerto Rico are not required to be covered by the PBGC.  Instead, in order for defined benefit plans that are qualified under Puerto Rico tax law, with a trust located in Puerto Rico, and participants who are residents of Puerto Rico to be covered by the PBGC, the plan must make an irrevocable election under ERISA Section 1022(I)(2) to be considered a qualified plan under the United States Code.

73. For years, the Plan was insured by the PBGC. Ultimately, however, the Plan did not make the irrevocable election under Section 1022(I)(2), and therefore the PBGC determined that the Plan was not covered by PBGC insurance.

74. As a result of that decision, participants in the Plan—many members of which, including Plaintiffs and Class members, paid into the Plan for many years when the Plan was covered by PBGC insurance—cannot benefit from the protection of benefits that PBGC insurance ordinarily provides.

75. The underfunding of the Retirement Plan was not disclosed to the Plaintiffs until April 2019, when RLA's liquidator presented an unsigned letter to the Plaintiffs stating that "luego consultar a los actuaries vinimos en concimiento de que el Plan esta, lo que se conoce en ingles como 'underfunded.'" Or, translated into English, "after consulting the actuaries we came to know that this Plan is, what is known in English, as 'underfunded.'"

76. At any time up and until Plan termination effective December 31, 2018, the Plan Administrator Defendants, Cooperativa, and Banco Popular could have taken action to cure their breaches of fiduciary duty and ensure the Plan was properly funded, but none of the Plan Administrator Defendants, or Cooperativa, or Banco Popular acted to cure their breaches of fiduciary duty at any time before the Plan was terminated.

1510428v.2

**CLASS ALLEGATIONS**

77. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated:

> All participants or beneficiaries of the Plan who suffered a reduction in accrued benefits under the Plan at the time the Plan was terminated. Excluded from the Class are any high-level executives at RLA and/or Cooperativa or any employees who had responsibility for or involvement in the administration of the Plan or who are subsequently determined to be fiduciaries of the Plan, including the Individual Defendants.

**A. Numerosity**

78. As of January 1, 2017, the Plan purportedly had a total of 217 participants, of which 99 were active participants, 58 were terminated participants with vested benefits, and 60 were participants receiving benefits. On information and belief, as a result of the underfunding of the Plan, all active participants, terminated participants with vested benefits, and participants receiving benefits suffered uniform reductions in pension benefits under the Plan at the time the Plan was terminated. Because all of these participants are members of the Class, the Class is so numerous that joinder of all members is impracticable.

**B. Commonality**

79. The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including: (1) whether the fiduciaries of the Plan breached their fiduciary duties by allowing the Plan to invest in bonds of instrumentalities and public corporations of the Commonwealth of Puerto Rico; (2) whether the fiduciaries of the Plan breached their fiduciary duties by failing to cause RLA to contribute the required contributions to the Plan; (3) whether the fiduciaries of the Plan breached their fiduciary duties by failing to cause RLA to fund the Plan adequately and by relying on an incorrect assumption of a

1510428v.2

higher interest rate on investments than could reasonably have been expected to be achieved; (4) whether Banco Popular, either on its own or with the assistance of or at the direction of Santander Securities, breached its fiduciary duties by making investment management actions and/or decisions that caused the Plan to be underfunded and by failing to cause the Plan Administrator Defendants to fund the Plan adequately when Banco Popular knew the Plan was underfunded; (5) whether Santander Securities, either on its own or with the assistance of Banco Popular, breached its fiduciary duties by making investment management actions and/or decisions that caused the Plan to be underfunded and by failing to cause the Plan Administrator Defendants to fund the Plan adequately when Santander Securities knew the Plan was underfunded; (6) whether the Plan Administrator Defendants are liable for failing to elect to be covered by the PBGC; (7) whether the Plan Administrator Defendants, Cooperativa, Santander Securities, and Banco Popular are jointly and severally liable for each other's breaches as co-fiduciaries; (8) whether the Plan Administrator Defendants breached their duties by failing to provide notice to Plaintiffs that the Plan was severely underfunded beginning in at least 2014; (9) whether Cooperativa is vicariously liable for the breaches of fiduciary duty of those Plan Administrator Defendants that are its employees and officers; and (10) whether Troncoso and/or Towers Watson are liable for negligence in the performance of actuarial services for the Plan, by grossly underestimating the Plan's funding target.

## C. Typicality

80. Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain and terminate the Plan in accordance with ERISA or the common law.  Plaintiffs'

claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

81. Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of: a declaration that Cooperativa is vicariously liable for the actions of its employees, Defendants Gomez Arias, Vilaró Suárez, Rincon, and John Doe(s).

82. In addition, to the extent Plaintiffs seek monetary relief, it is for damages to the Plan in amounts that will ultimately be calculated pursuant to benefit formulas applicable to the members of the class, as well as civil fines to the Class in the same statutory daily amount for each member of the Class.

83. No Defendant named in Plaintiffs' Complaint has any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

**D. Adequacy**

84. Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

85. Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

86. No Defendant has a unique defense against the named Plaintiffs that would interfere with Plaintiffs' representation of the Class.

87. Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general, which includes ERISA class actions.

**E. Rule 23(b)(1) Requirements**

88. The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

### F. Rule 23(b)(3) Requirements

89. Further, certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the fiduciaries of the Plan breached their fiduciary duties by allowing the Plan to invest in bonds of instrumentalities and public corporations of the Commonwealth of Puerto Rico; (2) whether the fiduciaries of the Plan breached their fiduciary duties by failing to cause RLA to contribute the required contributions to the Plan; (3) whether the fiduciaries of the Plan breached their fiduciary duties by failing to cause RLA to fund the Plan adequately and by relying on an incorrect assumption of a higher interest rate on investments than could reasonably have been expected to be achieved; (4) whether Banco Popular, either on its own or with the assistance of or at the direction of Santander Securities, breached its fiduciary duties by making investment management actions and/or decisions that caused the Plan to be underfunded and by failing to cause the Plan Administrator Defendants to fund the Plan adequately when Banco Popular knew the Plan was underfunded; (5) whether Santander Securities, either on its own or with the assistance of Banco Popular, breached its fiduciary duties by making investment management actions and/or decisions that caused the Plan to be underfunded and by failing to cause the Plan Administrator Defendants to fund the Plan adequately when Santander Securities knew the Plan was underfunded; (6) whether the Plan Administrator Defendants are liable for

failing to elect to be covered by the PBGC; (7) whether the Plan Administrator Defendants, Cooperativa, Santander Securities, and Banco Popular are jointly and severally liable for each other's breaches as co-fiduciaries; (8) whether the Plan Administrator Defendants breached their duties by failing to provide notice to Plaintiffs that the Plan was severely underfunded beginning in at least 2014; (9) whether Cooperativa is vicariously liable for the breaches of fiduciary duty of those Plan Administrator Defendants that are its employees and officers; and (10) whether Troncoso and/or Towers Watson are liable for negligence in the performance of actuarial services for the Plan, by grossly underestimating the Plan's funding target. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally;

b. Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

c. There is no other litigation begun by any other Class member concerning the issues raised in this litigation;

d. This litigation is properly concentrated in this forum, which is where Defendants RLA and Cooperativa are headquartered, and where the Individual Defendants reside;

e. There will be no difficulties managing this case as a class action.

1510428v.2

**COUNT ONE: BREACH OF FIDUCIARY DUTY REGARDING PUERTO RICO BOND INVESTMENTS**
*Against Defendants Gomez Arias, Vilaró Suárez, Rincon, Alsina, and John Doe(s) as members of the Administrative Committee and against Cooperativa*

90. Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

91. The Administrative Committee's members, including the Plan Administrator Defendants, were ERISA fiduciaries, because the Plan names the Administrative Committee, through its role as Plan Administrator, as a Plan fiduciary.

92. The Plan Administrator Defendants are also ERISA fiduciaries because under the terms of the Plan and the corresponding Trust Agreement, the Plan Administrator exercised discretionary authority and/or discretionary control respecting management of the Plan and exercised authority and control respecting management and disposition of the Plan's assets.  Further, the Plan Administrator Defendants exercised discretionary authority and discretionary responsibility in the administration of the Plan.

93. Cooperativa is an ERISA fiduciary because, through its exercise of control over RLA's finances, it exercised discretionary authority over management of the Plan and management and disposition of the Plan's asserts.

94.  As fiduciaries under the Plan, the Plan Administrator Defendants and Cooperativa were required to discharge their duties:

(A) for the exclusive purpose of:

(i)      providing benefits to participants and their beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].

95. The Plan Administrator Defendants and Cooperativa breached their fiduciary duties by authorizing investment in Puerto Rico Bonds and/or by failing to prevent investments in Puerto Rico Bonds. The Plan Administrator Defendants and Cooperativa thus failed to diversify the investments of the plan so as to minimize the risk of large loss.

96. The Plan Administrator Defendants and Cooperativa's authorization of investment in Puerto Rico Bonds also displayed a failure to exercise the care, skill, prudence, and diligence under the circumstances that prudent plan administrators would use because they concentrated the Plan's assets in investments that were unsuitable for investment of retirement funds. One principal benefit of Puerto Rico Bonds is that these bonds are "triple tax exempt," but this benefit was of no value to the Plan, whose assets already accrued interest tax-free. The Puerto Rico Bonds were thus no more attractive as an investment in the Plan than other municipalities' securities, and it was imprudent to concentrate the Plan's investments in these bonds.

97. As a direct and proximate result of the Plan Administrator Defendants and Cooperativa's breaches of their fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class members the benefits they are owed under the Plan.

98. Plaintiffs were unaware that the Plan Administrator Defendants and Cooperativa breached their fiduciary duties by concentrating investments in Puerto Rico Bonds and/or allowing Banco Popular, either on its own or with the assistance or at the direction of an Investment Manager, to concentrate investments in Puerto Rico Bonds until shortly before this Complaint was filed.

1510428v.2

99. Under 29 U.S.C. § 1109(a) the Plan Administrator Defendants and Cooperativa are personally liable to make good to the Plan the losses that resulted from their breaches of their fiduciary duties. Because the Plan has been terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

## COUNT TWO: BREACH OF FIDUCIARY DUTY REGARDING PUERTO RICO BOND INVESTMENTS
### *Against Banco Popular as Plan Trustee*

100. Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

101. Banco Popular, as Trustee for the Plan, was a fiduciary as defined by ERISA, because the Plan's Trust Agreement provided it with authority and control regarding management and disposition of the Plan's assets. Specifically, the Trust Agreement gave Banco Popular the power to invest and reinvest the principal and income of the Trust Fund and to keep the Trust invested in securities or property that Banco Popular deemed advisable.

102. As a fiduciary under the Plan, Banco Popular was required to discharge its duties:

(A) for the exclusive purpose of:

(i)      providing benefits to participants and their beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].

103.    Banco Popular, either on its own or with the assistance of or at the direction of Santander Securities, breached its fiduciary duties by choosing to invest in Puerto Rico Bonds. Banco Popular thus failed to diversify the investments of the plan so as to minimize the risk of large loss, in violation of its fiduciary duties as set forth in ERISA.

104.    Banco Popular's decision, either on its own or with the assistance of or at the direction of Santander Securities, to invest in Puerto Rico Bonds also displayed a failure to exercise the care, skill, prudence, and diligence that a prudent trustee would use under the circumstances because they concentrated the Plan's assets in investments that were unsuitable for investment of retirement funds. One principal benefit of Puerto Rico Bonds is that these bonds are "triple tax exempt," but this benefit was of no value to the Plan, whose assets already accrued interest tax-free. The Puerto Rico Bonds were thus no more attractive as an investment in the Plan than other municipalities' securities, and it was imprudent to concentrate the Plan's investments in these bonds.

105.    Alternatively, Banco Popular breached its fiduciary duties if it followed instructions from the Administrative Committee or an Investment Manager to invest in Puerto Rico Bonds, because those instructions were in violation of ERISA, which, upon information and belief, Banco Popular knew or should have known.

106.    As a direct and proximate result of Banco Popular's breach of its fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class members the benefits they are owed under the Plan.

107.    Plaintiffs were unaware that Banco Popular breached its fiduciary duties by concentrating investments in Puerto Rico Bonds until shortly before this Complaint was filed.

1510428v.2

108.     Under 29 U.S.C. § 1109(a), Banco Popular is personally liable to make good to the Plan the losses that resulted from its breaches of its fiduciary duties. Because the Plan has been terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

## COUNT THREE: BREACH OF FIDUCIARY DUTY REGARDING PUERTO RICO BOND INVESTMENTS
### *Against Santander Securities as Plan Investment Manager*

109.     Santander Securities, as Investment Manager for the Plan, was a fiduciary as defined by ERISA, because the Plan's Trust Agreement provides the Investment Manager with authority and control regarding management and disposition of the Plan's assets. Specifically, the Trust Agreement gave the Investment Manager the power to direct the Trustee's investment and reinvestment of the principal and income of the Trust Fund and to keep the Trust invested in securities or property that the Investment Manager deemed advisable.

110.     As a fiduciary, Santander Securities was required to discharge its duties:

(E) for the exclusive purpose of:

(iii)     providing benefits to participants and their beneficiaries; and

(iv)     defraying reasonable expenses of administering the plan;

(F) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(G) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(H) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].

1510428v.2

111.    Santander Securities breached its fiduciary duties by choosing to invest heavily in Puerto Rico Bonds or to direct or assist Banco Popular to invest heavily in Puerto Rico Bonds. Santander Securities thus failed to diversify the investments of the plan so as to minimize the risk of large loss, in violation of its fiduciary duties as set forth in ERISA.

112.    Santander Securities' decision to invest in Puerto Rico Bonds and/or to direct or assist Banco Popular to invest in Puerto Rico Bonds also displayed a failure to exercise the care, skill, prudence, and diligence under the circumstances that a prudent Investment Manager would use because this concentrated the Plan's assets in investments that were unsuitable for investment of retirement funds. One principal benefit of bonds of instrumentalities and public corporations of the Commonwealth of Puerto Rico is that these bonds are "triple tax exempt," but this benefit was of no value to the Plan, whose assets already accrued interest tax-free. The bonds of instrumentalities and public corporations of the Commonwealth of Puerto Rico were thus no more attractive as an investment in the Plan than other municipalities' securities, and it was imprudent to concentrate the Plan's investments in these bonds.

113.    As a direct and proximate result of Santander Securities' breach of its fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class Members the benefits they are owed under the Plan.

114.    Claimant was unaware that Santander Securities breached its fiduciary duties by concentrating investments in Puerto Rico Bonds until shortly before this suit was filed.

115.    Under 29 U.S.C. § 1109(a), Santander Securities is personally liable to make good to the Plan the losses that resulted from its breaches of fiduciary duties. Because the Plan has been terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

1510428v.2

**COUNT FOUR: BREACH OF FIDUCIARY DUTY REGARDING FAILURE TO MAKE REQUIRED CONTRIBUTIONS RESULTING IN PLAN UNDERFUNDING**
*Against Defendants Gomez Arias, Vilaró Suárez, Rincon, Alsina, and John Doe(s) as members of the Administrative Committee and against Cooperativa*

116.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

117.    As set forth above, as fiduciaries to participants under the Plan, the Plan Administrator Defendants and Cooperativa were required to discharge their duties with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries.

118.    The Plan Administrator Defendants and Cooperativa breached their duty to administer the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries by failing to cause RLA to make sufficient contributions to fund the Plan.

119.    Further, the Plan Administrator Defendants and Cooperativa breached their duty to administer the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries by relying on the incorrect assumption of a higher interest rate on investments than could reasonably have been expected to be achieved, which thereby caused the funding target to be artificially low. The Plan Administrator Defendants and Cooperativa knew, or should have known, that the interest rate assumption was incorrect.

120.    As a direct and proximate result of the Plan Administrator Defendants and Cooperativa's breaches of their fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class members the benefits they are owed under the Plan.

121.    Plaintiffs were unaware that the Plan Administrator Defendants and Cooperativa breached their fiduciary duties by failing to adequately fund the Plan until Plaintiffs were notified that the Plan was underfunded in April 2019.

1510428v.2

122.    Under 29 U.S.C. § 1109(a), the Plan Administrator Defendants and Cooperativa are personally liable to make good to the Plan the losses that resulted from their breaches of their fiduciary duties. Because the Plan has been terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

**COUNT FIVE: BREACH OF FIDUCIARY DUTY REGARDING FAILURE TO ADVISE PLAN ADMINISTRATORS OF UNDERFUNDING**
*Against Banco Popular as Plan Trustee*

123.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

124.    As set forth above, as a fiduciary to participants under the Plan, Banco Popular was required to discharge its duties with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries.

125.    Banco Popular knew or should have known that the Plan was underfunded. Banco Popular failed to exercise the care, skill, prudence, and diligence under the circumstances that a prudent trustee would use because a prudent trustee would have advised the Plan Administrators that additional funds should have been contributed to the Plan.

126.    As a direct and proximate result of Banco Popular's breach of its fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class members the benefits they are owed under the Plan.

127.    Plaintiffs were unaware that Banco Popular breached its fiduciary duties by causing the Plan to be underfunded until Plaintiffs were notified that the Plan was underfunded in April 2019.

128.    Under 29 U.S.C. § 1109(a), Banco Popular is personally liable to make good to the Plan the losses that resulted from its breaches of its fiduciary duties. Because the Plan has been

1510428v.2

terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

## COUNT SIX: BREACH OF FIDUCIARY DUTY REGARDING FAILURE TO ADVISE PLAN ADMINISTRATORS OF UNDERFUNDING
### *Against Santander Securities as Plan Investment Manager*

129.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

130.    As set forth above, as a fiduciary to participants under the Plan, Santander Securities was required to discharge its duties with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries.

131.    Santander Securities displayed a failure to exercise the care, skill, prudence, and diligence under the circumstances that a prudent Investment Manager would use because a prudent Investment Manager would have advised the Plan Administrator that additional funds should have been contributed to the Plan.

132.    As a direct and proximate result of Santander Securities' breaches of its fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class Members the benefits they are owed under the Plan.

133.    Plaintiffs were not notified that the Plan was underfunded until at least April 2019.

134.    Under 29 U.S.C. § 1109(a) Santander Securities is personally liable to make good to the Plan the losses that resulted from its breaches of fiduciary duties. Because the Plan has been terminated, Claimant proposes that an independent fiduciary be appointed to hold the amounts Santander Securities owes to the Plan in trust.

## COUNT SEVEN: BREACH OF FIDUCIARY DUTY FOR FAILING TO ELECT TO BE COVERED BY THE PBGC

1510428v.2

*Against Defendants Gomez Arias, Vilaró Suárez, Rincon, Alsina, and John Doe(s) as members of the Administrative Committee*

135.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

136.     As set forth above, as fiduciaries to participants under the Plan, the Plan Administrator Defendants were required to discharge their duties with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries.

137.     Upon information and belief, the Administrative Committee, including the Plan Administrator Defendants, never made the irrevocable election under Section 1022(i)(2) of ERISA to be considered a qualified plan under the United States Code. Therefore, the PBGC determined that the Plan was not covered by PBGC's insurance.

138.     Although the Plan Administrator Defendants could have made this irrevocable decision at any time, they failed to do so before the Plan was terminated effective December 31, 2018.  In other words, the Plan Administrator Defendants' failure to make the irrevocable decision is a fiduciary breach by omission that could have been cured up until January 2019, when the decision was made to terminate the Plan effective December 31, 2018.

139.     As a result of the Plan Administrator Defendants' continuing refusal to make the irrevocable election to be a qualified plan, when the Plan terminated effective December 31, 2018, with grossly inadequate assets to pay the benefits owed to all participants in the Plan, participants in the Plan, including Plaintiffs and Class members, were unable to benefit from the protection of PBGC insurance, which typically will pay the benefits owed under a defined benefit plan up to a certain amount if a plan is terminated without sufficient funds to pay the benefits accrued under it.

140.     As a direct and proximate result of the Plan Administrator Defendants' breaches of their fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay

1510428v.2

Plaintiffs and Class members the benefits they are owed under the Plan. Further, the Plan cannot benefit from PBGC insurance, which would have paid at least some amounts that the Plan was unable to pay to participants upon termination.

141.    Under 29 U.S.C. § 1109(a), the Plan Administrator Defendants are personally liable to make good to the Plan the losses that resulted from their breaches of their fiduciary duties. Because the Plan has been terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

## COUNT EIGHT: CO-FIDUCIARY LIABILITY
***Against Defendants Gomez Arias, Vilaró Suárez, Rincon, Jane Doe(s), and John Doe(s) as members of the Administrative Committee, Cooperativa, Santander Securities as Investment Manager, and Banco Popular as Plan Trustee***

142.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

143.    The Plan Administrator Defendants, Cooperativa, Santander Securities, and Banco Popular are all fiduciaries to participants in the Plan as that term is defined under ERISA. Therefore, the Plan Administrator Defendants and Banco Popular are co-fiduciaries, as that term is contemplated in 29 U.S.C. § 1105.

144.    The Plan Administrator Defendants, therefore, are liable for each other's breaches of fiduciary duty, for Cooperativa's breaches of fiduciary duties, for Santander Securities' breaches of fiduciary duties, and for Banco Popular's breaches of fiduciary duties, because by their failure to comply with the provisions of ERISA, specifically the fiduciary duties set forth in 29 U.S.C. § 1104(a)(1), the Plan Administrator Defendants enabled each other, Cooperativa, Santander Securities, and Banco Popular to commit breaches of their fiduciary duties owed to Plan participants, including Plaintiffs and Class members.

1510428v.2

145.    Similarly, Cooperativa is liable for the Plan Administrator Defendants, Santander Securities', Banco Popular's breaches of fiduciary duties, because by Cooperativa's failure to comply with the provisions of ERISA, specifically the fiduciary duties set forth in 29 U.S.C. § 1104(a)(1), Cooperativa enabled the Plan Administrator Defendants, Santander Securities, and Banco Popular to commit breaches of their fiduciary duties owed to Plan participants, including Plaintiffs and Class members.

146.    For example, the Plan Administrator Defendants and Cooperativa failed to adequately monitor Santander Securities and Banco Popular's investment of Plan assets, which enabled Santander Securities and Banco Popular to breach their fiduciary duties to Plan participants. The Plan Administrator Defendants knowingly participated in Banco Popular and Santander Securities' breaches because they accepted the benefits of these breaches, both personally and on behalf of their employer. Cooperativa knowingly participated in Santander Securities and Banco Popular's breaches because it accepted the benefits of these breaches.

147.    Cooperativa, in turn, failed to adequately monitor its employees, the Plan Administrator Defendants, in their administration of Plan assets.

148.    Similarly, Banco Popular and Santander Securities are liable for each of the Plan Administrator Defendants' and Cooperativa's breaches of their fiduciary duties, because Banco Popular and Santander Securities knowingly enabled the Plan Administrator Defendants and Cooperativa to breach their fiduciary duties to Plan participants, including Plaintiffs and Class Members, within the meaning of 29 U.S.C. § 1105(a)(1).

149.    For example, if when Banco Popular, either on its own or with the assistance of or at the direction of Santander Securities, invested in Puerto Rico Bonds, and if that investment was at the direction the Plan Administrator Defendants, then Banco Popular and Santander Securities

knowingly participated in the Plan Administrator Defendants' and Cooperativa's breaches of their fiduciary duty, because Banco Popular and Santander Securities knew that the decision to invest in Puerto Rico Bonds violated the Plan Administrator Defendants' and Cooperativa's duties to Plan participants under ERISA.

150.    Further, if Banco Popular invested in Puerto Rico Bonds at the direction of Santander Securities, then Banco Popular knowingly participated in Santander Securities' breaches of its fiduciary duties, because Banco Popular knew that the decision to invest in Puerto Rico Bonds violated Santander Securities' duties to Plan participants under ERISA.

151.    Similarly, if Banco Popular invested in Puerto Rico Bonds at the direction of Santander Securities, then Santander Securities knowingly participated in Banco Popular's breaches of its fiduciary duties, because Santander Securities knew that investing in Puerto Rico Bonds violated Banco Popular's duties to Plan participants under ERISA.

152.    Additionally, Banco Popular and Santander Securities knowingly participated in the Plan Administrator Defendants and Cooperativa's breaches of their fiduciary duties because Banco Popular and Santander Securities knew that the Plan was underfunded and did not take action to ensure that the Plan Administrator Defendants or Cooperativa contributed additional funds to the Plan.

153.    As a direct and proximate result of the Plan Administrator Defendants, Cooperativa, Santander Securities, and Banco Popular's breaches of their fiduciary duties, the Plan is significantly underfunded and does not have the resources to pay Plaintiffs and Class members the benefits they are owed under the Plan.

1510428v.2

154.    Plaintiffs were unaware that Banco Popular, Cooperativa, Santander Securities, and the Plan Administrator Defendants enabled each other to breach their fiduciary duties until shortly before this Complaint was filed.

155.    Under 29 U.S.C. § 1109(a), the Plan Administrator Defendants, Cooperativa, Santander Securities, and Banco Popular are personally liable to make good to the Plan the losses that resulted from each other's breaches of fiduciary duties. Because the Plan has been terminated, Plaintiffs propose that an independent fiduciary be appointed to hold the amounts Defendants owe to the Plan in trust.

## COUNT TEN: FOR VIOLATION OF REPORTING AND DISCLOSURE REQUIREMENTS
### *Against Defendants Gomez Arias, Vilaró Suárez, Rincon, Jane Doe(s), and John Doe(s) as members of the Administrative Committee*

156.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

157.    29 U.S.C. § 1021 sets forth certain disclosure and reporting requirements for the administrators of plans covered under ERISA.

158.    Specifically, 29 U.S.C. § 1021(d)(1) requires notification to participants and beneficiaries if a Plan fails to meet its minimum funding standards.

159.    Additionally, 29 U.S.C. § 1021(f) requires that plan administrators provide funding notices to plan participants and beneficiaries every year.  This funding notice must include, *inter alia*, a statement as to whether the plan's funding target attainment percentage for the plan year to which the notice relates, and for the 2 preceding plan years, is at least 100 percent (and, if not, the actual percentages), and a statement regarding the plan's assets and liabilities.

160.    The Administrative Committee for the Plan, including the Plan Administrator Defendants, failed to provide notice to participants, including Plaintiffs and Class members, that

1510428v.2

the Plan was underfunded until 2019, although the Plan was underfunded beginning at least in 2014.

161.     Further, the Administrative Committee for the Plan, including the Plan Administrator Defendants, did not provide participants, including Plaintiffs and Class members, with yearly funding notices stating whether the fund had attained 100% of its funding target and/or outlining the Plan's assets and liabilities.

162.     Plaintiffs did not become aware that they were not provided with funding notices that the Plan was underfunded until Plaintiffs were notified that the Plan was underfunded in April 2019.

163.     The Plan Administrator Defendants are liable for up to $110 per day, for each day that they have failed to provide the requisite notices regarding funding.

## COUNT ELEVEN: FOR VICARIOUS LIABILITY
### *Against Cooperativa*

164.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

165.     The Plan Administrator Defendants other than Alsina, in their role as members of the Administrative Committee, were acting within the course and scope of their employment with Cooperativa, which was at all times the 100% owner of RLA. Cooperativa directed its employees, including the Plan Administrator Defendants other than Alsina, to participate in management and administration of the RLA Plan.

166.     Plaintiffs and Class members are therefore entitled to a declaratory judgment holding that Defendant Cooperativa is vicariously liable, under the principles of respondeat superior, for payment of all damages awarded in favor of Plaintiffs and Class members against the Plan Administrator Defendants other than Alsina.

1510428v.2

**COUNT TWELVE: FOR ACTUARIAL MALPRACTICE UNDER THE LAWS OF PUERTO RICO**
*Against Troncoso Consulting Group, Inc. and Willis Towers Watson US LLC*

167.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

168.     From at least 2009 through 2016, Fernando Troncoso and Troncoso Consulting Group, Inc. served as the Plan's actuary, pursuant to the Plan's provision allowing the Administrative Committee to select an actuary and/or an actuarial firm to provide actuarial services in connection with the administration of the Plan.

169.     From at least January 2016 through 2018, Towers Watson provided actuarial services and/or served as the Plan's actuary, pursuant to the Plan's provision allowing the Administrative Committee to select an actuary and/or an actuarial firm to provide actuarial services in connection with the administration of the Plan.

170.     As actuaries, Troncoso and Towers Watson provided annual reports calculating the Plan's funding target and its actuarial shortfall.  These figures were used to calculate the required contributions of the Plan's employer sponsor.

171.     Based upon information and belief, Troncoso and Towers Watson negligently undervalued the Plan's funding target by millions of dollars. Troncoso and Towers Watson, as professional actuaries capable of reading and understanding financial documents, knew or should have known that the funding target was incorrect.

172.      Troncoso's and Towers Watson's negligence caused the Plan's sponsor to contribute less money to the Plan, and caused the Plan to continue to be underfunded by many millions of dollars.

173.     Further, Troncoso and Towers Watson failed to inform the Plan Administrator Defendants, Banco Popular, and/or Plan participants such as Plaintiffs that the Plan was underfunded because the funding targets were incorrect.

174.     Plaintiffs did not become aware that the figures used to calculate the required contributions to the Plan were negligently undervalued until shortly before this Complaint was filed.

175.     Troncoso and Towers Watson are liable for failing to report that the Plan was underfunded, and its negligence in undervaluing the Plan's funding target. Troncoso's negligence caused the Plan's underfunding, which resulted in the Plan's termination and its inability to pay participants their accrued benefits.

**COUNT THIRTEEN: DIRECT ACTION UNDER 26 L.P.R.A. § 2003.**
*Against Liberty Mutual*

176.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if stated fully herein.

177.     Pursuant to 26 L.P.R.A. § 2001, "[t]he insurer issuing a policy insuring any person against loss or damage through legal liability for … damage to property of a third person, shall become liable whenever a loss covered by the policy occurs…"

178.     Pursuant to 26 L.P.R.A. § 2003, "[a]ny individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly."

179.     Liberty Mutual issued one or more policies insuring one or more of the Defendants against loss or damage through legal liability for damages under one or more of the causes of action stated in this Complaint.  At minimum, Liberty Mutual issued an Executive Advantage

1510428v.2

Policy, Policy Number VKUDO-001327-18 to RLA for the policy period January 1, 2018 to January 1, 2019. Upon information and belief, this Policy provides coverage for at least the acts and omissions of Aleida Alsina as an employee of RLA. Liberty Mutual is jointly and severally liable with the insured Defendant(s) for all damages as outlined above, up to any applicable limit of liability in the applicable policy.

WHEREFORE, Plaintiffs respectfully request that, after due proceedings are had, the Court enter judgments:

1. Awarding damages in their favor against the Plan Administrator Defendants, Cooperativa, Banco Popular, Santander Securities, Troncoso, Towers Watson, and Liberty Mutual;

2. Appointing an independent fiduciary to hold the amounts recovered from Defendants in trust;

3. Declaring that Cooperativa is vicariously liable for any damages awarded in favor of Plaintiffs and against the Plan Administrator Defendants;

4. Awarding any and all attorney's fees, costs, and interest allowed by contract or law, specifically as set forth in 29 U.S.C. § 1132(g); and

5. Awarding any and all other relief as may be just and equitable.

Dated: May 8, 2024

Respectfully submitted,

/s/ Jason W. Burge
Jason W. Burge, admitted pro hac vice
Rebekka C. Veith, admitted pro hac vice
Kaja S. Elmer, admitted pro hac vice
Fishman Haygood, LLP
201 St. Charles, 46th Floor
New Orleans, LA 70170
Telephone: (504) 585-5252

1510428v.2

Facsimile: (504) 586-5250
jburge@fishmanhaygood.com
rveith@fishmanhaygood.com
kelmer@fishmanhaygood.com

and

/s/  *Harold D. Vicente Colon*
Harold D. Vicente Colon
USDC PR 211805
Vicente & Cuebas
Capital Center Sur Phl-1201
239 Arterial Hostos
Hato Rey
Tel. (787) 751-8000
Fax (787) 756-5250
hdvc@vclawpr.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jason W. Burge*
Jason W. Burge

1510428v.2