IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**Joel Vega Ortiz, et al.,**

    **Plaintiffs,**      CASE NO. 3:19-cv-02056-SCC-GLS

  **v.**

**Cooperativa de Seguros Multiples de**      Class Action
**Puerto Rico, et al.**

    **Defendants.**

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT SOLELY BETWEEN PLAINTIFFS AND DEFENDANT SANTANDER SECURITIES, LLC, APPROVING FORM AND MANNER OF <u>SETTLEMENT NOTICE, AND SCHEDULING FAIRNESS HEARING</u>

Plaintiffs Joel Vega Ortiz, Gretchen Montalvo Espinosa, Jamilh M. Elias, Maribella Ramos Prieta, and the Class that they represent as certified by this Court (R. Doc. 256) (hereinafter referred to collectively as "Plaintiffs") respectfully submit this Memorandum in Support of Motion for Preliminary Approval of Partial Class Action Settlement (the "Motion") as follows:[1]

### PRELIMINARY STATEMENT

In this class action, Plaintiffs have alleged that Defendant Santander Securities, LLC ("SSLLC"), (collectively with Plaintiffs, the "Parties"), served as Investment Manager for Plaintiffs' Real Legacy Assurance Plan (the "Plan") and had the authority to deliver instructions to the Plan Trustee as to how the Trustee should carry out its investment responsibilities. Plaintiffs

---

[1] Nothing in this Motion shall prejudice in any way Plaintiffs' rights to pursue their claims against the Non-Settling Defendants, as that term is defined in the Settlement Agreement, which includes: Cooperativa de Seguros Múltiples de Puerto Rico; Banco Popular de Puerto Rico; Ruth E. Gomez Arias; Luis J. Vilaró Suárez; Luisana Rincon; Aleida Alsina; Willis Towers Watson US, LLC; Liberty Mutual Insurance Company; and their respective assigns and successors.

1

allege that SSLLC breached fiduciary duties by providing improper investment advice and by making investment management actions and/or decisions that caused the Plan to be overinvested in Puerto Rican Bonds and consequentially underfunded once those bonds suffered losses.

Plaintiffs have entered into a Partial Class Action Settlement Agreement between Plaintiffs and SSLLC (the "Settlement"), filed herewith as **Exhibit 1**. If approved, this Settlement would resolve Plaintiffs' claims against SSLLC in this action. The Settlement was negotiated at arm's length by experienced and knowledgeable counsel, following significant discovery and motion practice in this action, as well as a mediation conducted by an experienced, neutral mediator. The Settlement is a fair, reasonable, and adequate Settlement. Accordingly, preliminary approval is warranted.[2]

Plaintiffs therefore respectfully request that this Court (1) preliminarily approve the Settlement Agreement attached hereto as Exhibit 1; (2) establish a qualified settlement fund; (3) set a date and time for a Fairness Hearing; (4) approve the form and manner of the Settlement Notice attached hereto as Exhibit 1-A; (5) approve the appointment of Donlin, Recano & Company, Inc. as the Settlement Administrator for the Settlement; (6) set a deadline for class counsel's petition for attorneys' fees, litigation costs, and Case Contribution Awards to the Class Representatives, and all briefs in support thereof, no later than forty-five days before the Fairness Hearing; (7) set a deadline for all briefs and other documents to be submitted in support of final approval of the Settlement, no later than forty-five days before the Fairness Hearing; and (8) set forth the requirements for any objections by Settlement Class Members to the Settlement Agreement, Plan of Allocation, proposed award of attorneys' fees and expenses, costs of

---

[2] Plaintiffs and SSLLC have jointly agreed upon a form Proposed Order Granting Preliminary Approval of Partial Class Action Settlement, which is filed herewith as **Exhibit 1-C**.

administering the Settlement out of the Settlement Fund, or the request for Case Contribution Awards for the Class Representatives.

## SETTLEMENT OVERVIEW

### I. Terms of the Proposed Settlement

The individuals covered by the Settlement are referred to as the "Settlement Class." The Settlement Class includes all persons who participated in the Plan and were entitled to future payment of a vested accrued benefit as of December 31, 2018 (the effective date of Plan termination), including any Beneficiary[3] of a deceased Person[4] who participated in the Plan and was entitled to future payment of a vested accrued benefit as of December 31, 2018, and any Alternate Payee[5] of a Person subject to a QDRO[6] who participated in the Plan and was entitled to future payment of a vested accrued benefit as of December 31, 2018.

The Settlement provides adequate relief to the Class from SSLLC, in the form of a $400,000.00 contribution to the Qualified Settlement Fund by SSLLC. The Settlement addresses Plaintiffs' core complaints against SSLLC via this monetary relief, while also taking into account the substantial risks inherent in proceeding with litigation of this nature. Furthermore, all Settlement Class Members will be provided with Notice and an opportunity to object to the Settlement via the proposed Notice filed herewith as **Exhibit 1-A**.

---

[3] "Beneficiary" means any individual, trust, estate, or other recipient entitled to receive death benefits payable under the Plan, on either a primary or contingent basis, other than an Alternate Payee.
[4] "Person" means an individual, partnership, corporation, governmental entity, or any other form of organization.
[5] "Alternate Payee" means a Person other than a Participant or Beneficiary in the Plan who is entitled to a benefit under the Plan as a result of a QDRO.
[6] "QDRO" means a Qualified Domestic Relations Order within the meaning of 26 U.S.C. § 414(p).

## II. The Proposed Notice

The Settlement provides that Class Counsel shall cause a Settlement Administrator to disseminate the Settlement Notice in the form of **Exhibit A** to the Settlement (i.e., **Exhibit 1-A** filed herewith). *See* **Exhibit 1**, Settlement § 2.2.3. In order for the Settlement Administrator to be able to provide timely Class Notice, no later than forty-five calendar days after entry of the Preliminary Approval Order, the Plan Recordkeeper must promptly provide the Settlement Administrator data regarding the Plan's participants. *See* **Exhibit 1-C**, Proposed Preliminary Approval Order. The Settlement Administrator shall, on or before the Notice Mailing Date, mail the Class Notice via first-class mail through the U.S. Postal Service, with postage prepaid, at the addresses provided by the Plan Recordkeeper, and shall also email the Class Notice to all Settlement Class Members at any email addresses provided by the Plan Recordkeeper. *See* **Exhibit 1-C**, Proposed Preliminary Approval Order.

The Class Notice identifies the amount of the Settlement Fund, the maximum amount of attorneys' fees and expenses deducted therefrom, the amounts requested by the Named Plaintiffs as Case Contribution Awards, and the Settlement Administrator's methodology for determining each Settlement Class Member's share of the remaining Settlement Fund. With respect to any Settlement Class Member whose Class Notice is returned, the Settlement Administrator shall use commercially reasonable efforts to locate such Class Member(s) and resend the Class Notice one additional time.

## ARGUMENT

### I. The Court Should Preliminarily Approve the Proposed Settlement.

Undersigned counsel have worked diligently to reach a fair, reasonable, and adequate settlement with SSLLC. Plaintiffs and their counsel believe the claims against SSLLC that the

Settlement resolves are meritorious. Plaintiffs recognize, however, that there is significant risk and expense associated with continuing to prosecute their claims against SSLLC through trial and any further appeals. In negotiating and evaluating the Settlement, Plaintiffs and undersigned counsel have taken such risks and uncertainties into account, as well as the delays inherent in complex class action litigation. In light of the foregoing considerations, undersigned counsel believes that the present Settlement provides an excellent outcome for the Settlement Class against SSLLC, and is therefore in the best interests of the Settlement Class.

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement of claims brought on a class basis: "The claims . . . of a certified class . . . may be settled . . . or compromised only with the court's approval." The "court may approve [a class action settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In order to determine whether a settlement is "fair, reasonable, and adequate," Rule 23(e) requires the district court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i)   the costs, risks, and delay of trial and appeal;
>    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

The Advisory Committee Notes to Rule 23 advise that the first two factors are "procedural" in nature, "looking to the conduct of the litigation and of the negotiations leading up to the

proposed settlement," whereas the latter two factors "guide a 'substantive' review of the terms of the proposed settlement."

"[A]pproval or rejection of a class-action settlement is entrusted to the district court's informed discretion." *Cohen v. Brown Univ.*, 16 F. 4th 935, 944 (1st Cir. 2021) (citing *Robinson v. Nat'l Student Clearinghouse*, 14 F. 4th 56, 59 (1st Cir. 2021)). "[T]he district court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard and the need to balance [the settlement's] benefits and costs." *Robinson*, 14 F. 4th at 59 (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Health Benefits Fund*, 582 F. 3d 30, 44 (1st Cir. 2009)) (alterations in original).

Here, the Settlement meets all four factors outlined in Rule 23(e), and approval of the Settlement is well within the Court's discretion.

### A. Class Counsel Adequately Represented the Settlement Class.

Because representation of the Settlement Class did not present any of the sort of conflicts that would require separate representation, Class Counsel's representation was adequate under Rule 23(e). "[T]he adequate representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F. 4th 340, 345 (1st Cir. 2022) (quoting *Cohen*, 16 F. 4th at 945). These sort of conflicts "undermine the indispensable structural assurance of fair and adequate representation for the diverse groups and individuals affected by the class-action litigation or settlement." *Id.* (quoting *Cohen*, 16 F. 4th at 945). Conflicts may arise where there is a common fund that must be allocated among class members, and "a benefit to one group of class members (in the form of a larger portion of the common fund) comes at the detriment of the other class members (who receive a small portion as a result)." *Id.* However, "only those conflicts that 'are fundamental to the suit and . . .

go to the heart of the litigation' breach the adequacy-of-representation standard." *Id.* at 346 (citing *Cohen*, 16 F. 4th at 945–46). "Put another way, . . . the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Id.* (quoting *Matamoros v. Starbucks Corp.*, 699 F. 3d 129, 138 (1st Cir. 2012)) (alterations in original). "[I]ntra-class conflict is unacceptable when it presents an actual and substantial risk of skewing available relief in favor of some subset of class members." *Id.* (quoting *Cohen*, 16 F. 4th at 950). Furthermore, "[c]lass actions in which all class members have materially common claims are unlikely to require separate representation," because in such cases—as here—"differences in claim value would likely be subject to objective calculation." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1021 (9th Cir. 1998) (reversed on other grounds)).

Here, there is no risk of intra-class conflict that would undermine the adequacy of the representation. The Settlement Class does not involve subsets whose interests are at odds with one another. Furthermore, each Settlement Class Member's share of the Settlement Fund is calculated via the same objective method to ensure an equitable division of funds. In summary, each Settlement Class Member's share will be calculated as follows:

- First, the Settlement Administrator will obtain the following information for each Settlement Class member: (1) the Present Value of the Vested Accrued Benefit as of September 1, 2019 (the "Measurement Date") using certain Settlement Allocation Assumptions as defined in the Plan of Allocation; (2) the Vested Accrued Benefit for each Class Member; and (3) the Monthly Benefit in Payment to each Class Member under the Universal Life Group Annuity Contract issued by Universal Life Insurance Company on behalf of certain Class Members following Plan termination.

- The Net Settlement Amount will be allocated as follows:

    1.   For each Class Member, multiply the Present Value of the Vested Accrued Benefit as of the Measurement Date by a fraction, the numerator of which is the Monthly Benefit in Payment and the denominator of which is the Vested Accrued Benefit.

2.   Subtract the amount calculated in paragraph 1 for each Class Member from that Class Member's Present Value of the Vested Accrued Benefit. This is the Class Member's Remaining Interest as of the Measurement Date.

3.   Sum the Remaining Interest for all Class Members.

4.   Allocate each Class Member a share of the Net Settlement Amount in proportion to the sum of that Class Member's Remaining Interest by multiplying the Net Settlement Amount by a fraction, the numerator of which is the Class Member's Remaining Interest under paragraph 2 and the denominator of which is the sum of all Class Members' Remaining Interest under section paragraph 3.

The amounts resulting from this initial calculation will be known as the "Preliminary Entitlement Amount" for each Settlement Class Member. The Preliminary Entitlement Amounts will then be adjusted to provide a distribution of $10.00 (the "De Minimus Amount") to any Settlement Class Members entitled to a distribution of less than $10.00. This method of distribution does not create any intra-class conflicts that would undermine Class Counsel's representation of the Class in this matter.

### B. The Settlement Was Negotiated at Arm's Length.

Here, Class Counsel and counsel for SSLLC negotiated the settlement at arm's length. Where "negotiations were 'long and arduous, spanning a considerable time-period'" and resolution is only "reached after a great deal of dispute between the parties as to the terms of the agreement," courts in this district have found that the requisite arm's length negotiation took place. *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 471, 473 (D.P.R. 2011). Counsel for the Parties have here spent multiple mediation sessions negotiating the terms of the Settlement, indicating that the Settlement was indeed negotiated at arm's length as required by Rule 23(e).

### C. The Relief Provided for the Settlement Class by the Settlement Agreement Is Adequate.

The relief provided by SSLLC pursuant to the Settlement Agreement is adequate. Where, as here, "the parties negotiated at arm's length and conducted sufficient discovery, the district court <u>must</u> presume the settlement is reasonable." *Cohen*, 16 F. 4th at 951 (quoting *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F. 3d 24, 32–33 (1st Cir. 2009); emphasis added). "A party seeking to overcome such presumption faces a steep uphill climb." *Id.* Any objectors must "rebut the presumption of reasonableness." *Id.* The Court's ultimate decision on this factor "involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Robinson v. Nat'l Student Clearinghouse*, 14 F. 4th 56, 59 (1st Cir. 2021).

Here, because the Parties negotiated at arm's length and conducted extensive discovery, there is a presumption of reasonableness. Further, this presumption of reasonableness is bolstered by the significant costs, risks, and potential delay related to trial and any subsequent appeals; the objective method proposed for distribution of the Settlement Fund; and the reasonable and typical attorneys' fees sought in this matter.

Additionally, the Gross Settlement Amount of $400,000.00 is reasonable in light of the damages alleged by the Plaintiffs and the risks of this case. The primary Puerto Rican Bonds at issue in this case were purchased for approximately $4,100,000 and sold for approximately $2,600,000, yielding a capital loss to the Plan of approximately $1,500,000. While Plaintiffs believe that market-adjusted damages are more appropriate to compensate for this type of investment loss, there is no certainty that the Court will award market-adjusted damages. Also, of the total capital losses, only $634,773 of the losses were sustained in the six years prior to the

Plaintiffs filing suit in this matter. SSLLC has argued that losses incurred prior to six years before filing are barred by ERISA's statute of repose, another issue that has not yet been resolved by the Court.

Further, while Plaintiffs believe their claims against SSLLC relating to the Plan's purchase and holding of the Puerto Rican Bonds are strong, discovery has demonstrated that SSLLC ceased providing services to the Plan in 2014, over four years prior to the Plan's termination and prior to the Plan's fiduciaries making any decisions about PBGC insurance coverage. Additionally, while Plaintiffs believe that SSLLC was a fiduciary to the Plan at all material times through 2014, SSLLC has maintained that there is no written document establishing that SSLLC was the Plan's investment manager and that SSLLC never had authority to direct the Plan's investments. In fact, SSLLC has produced documents which may establish that the Plan Trustee, and not SSLLC, had discretion over the Plan's investment accounts. Accordingly, the Plaintiffs' claims against SSLLC are materially weaker than the claims against the other defendants, which explains in part why Plaintiffs did not initially sue SSLLC in this matter but instead initially asserted their claims in a FINRA arbitration.

For all of these reasons, the relief provided by SSLLC to the Settlement Class pursuant to the Settlement is adequate.

### D. The Settlement Treats Class Members Equitably Relative to One Another.

The Settlement treats members of the Settlement Class equitably relative to one another in that their claims are settled pursuant to an objective method in proportion to their losses. Rule 23(e)(2)(D) requires that a proposed settlement agreement "treat[ ] class members equitably relative to each other." Case contribution awards to named plaintiffs, *i.e.*, "incentive payments," "fit snugly into the requirement of Rule 23(e)(2)(D)." *Murray v. Grocery Delivery E-Servs. USA*

10

*Inc.*, 55 F. 4th 340, 353 (1st Cir. 2022). "Rule 23 class actions still require named plaintiffs to bear the brunt of litigation (document collection, depositions, trial testimony, etc.), which is a burden that could guarantee a net loss for the named plaintiffs unless somehow fairly shifted to those whose interests they advance." *Id.* Accordingly, case contribution awards to named plaintiffs "remove an impediment to bringing meritorious class actions" and compensate class representatives for the extra risk they undertake. *Id.*

Here, the Settlement treats members of the Settlement Class equitably because it settles claims pursuant to an objection method in proportion to their losses and also compensates the Named Plaintiffs for the additional effort and risk they have undertaken with respect to the litigation. Specifically, the Settlement provides a mechanism to allocated funds to each Settlement Class Member based on their accrued vested benefit at the time of Plan termination. Each Settlement Class Member will receive a proportional share of the Net Settlement Amount, with an adjustment to provide a de minimus distribution of $10.00 (the "De Minimus Amount") to any Settlement Class Members entitled to a distribution of less than $10.00. The Named Plaintiffs will also seek Case Contribution Awards of $5,000 to compensate them for their efforts in leading the litigation on behalf of the Class. Accordingly, the Settlement "treats class members equitably relative to each other" as required by Rule 23(e)(2)(D).

Because all of the factors of Rule 23(e) are met, the Court should preliminarily approve the Settlement Agreement.

## II.   The Court Should Approve the Proposed Notice Plan.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The settlement notice "must comply with the Constitution's due process requirements—that is, the notice must be 'reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 8:15 (6th ed. 2023) (quoting *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F. 3d 615, 629–30 (6th Cir. 2007)) (collecting other cases). While Rule 23(e)(1) requires the notice be provided "in a reasonable manner," "there are 'no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F. 3d 96, 114 (2d Cir. 2005)). Furthermore, Rule 23(e)(1) "relies on courts and counsel to focus on the means or combination of means [of notice] most likely to be effective in the case before the court." FED. R. CIV. P. 23(c)(2)(B), advisory committee's note (2018).

Here, the Settlement requires the Settlement Administrator to send the Settlement Notice to the Settlement Class by first-class mail and/or by email. *See* **Exhibit 1**. Furthermore, per the Preliminary Approval Order agreed upon by the Parties, the Settlement Notice must be provided to all Settlement Class Members within forty-five calendar days after entry of the Preliminary Approval Order via first-class mail through the U.S. Postal Service, with postage prepaid, at the addresses provided by the Plan Recordkeeper, and via email at any email addresses provided by the Plan Recordkeeper. *See* **Exhibit 1-C**, Proposed Preliminary Approval Order. Furthermore, the Preliminary Approval Order agreed upon by the Parties requires the Settlement Administrator to use commercially reasonable efforts to locate any Settlement Class Member whose Settlement Notice is returned and to resend the documents once more. Accordingly, the Notice is reasonably calculated to apprise the Settlement Class of the Settlement, employs multiple means to provide such notice, and should therefore be approved.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) preliminarily approve the Settlement Agreement attached hereto as Exhibit 1; (2) establish a qualified settlement fund; (3) set a date and time for a Fairness Hearing; (4) approve the form and manner of the Settlement Notice attached hereto as Exhibit 1-A; (5) approve the appointment of Donlin, Recano & Company, Inc. as the Settlement Administrator for the Settlement; (6) set a deadline for class counsel's petition for attorneys' fees, litigation costs, and Case Contribution Awards to the Class Representatives, and all briefs in support thereof, no later than forty-five days before the Fairness Hearing; (7) set a deadline for all briefs and other documents to be submitted in support of final approval of the Settlement, no later than forty-five days before the Fairness Hearing; and (8) set forth the requirements for any objections by Settlement Class Members to the Settlement Agreement, Plan of Allocation, proposed award of attorneys' fees and expenses, costs of administering the Settlement out of the Settlement Fund, or the request for Case Contribution Awards for the Class Representatives.

Dated: August 20, 2024

Respectfully submitted,

On behalf of Plaintiffs, Individually and as Representatives of the Settlement Class:

*/s/ Kaja S. Elmer*
Jason W. Burge, admitted pro hac vice
Rebekka C. Veith, admitted pro hac vice
Kaja S. Elmer, admitted pro hac vice
FISHMAN HAYGOOD, LLP
201 St. Charles, 46th Floor 239
New Orleans, LA 70170
Telephone: (504) 585-5252
Facsimile: (504) 586-5250

3903977v.1

jburge@fishmanhaygood.com
rveith@fishmanhaygood.com
kelmer@fishmanhaygood.com


*/s/ Harold D. Vicente Colon*
Harold D. Vicente Colon
USDC PR 211805
Vicente Law LLC
Capital Center Sur Ph1-1201
Arterial Hostos
Hato Rey
Tel. (787) 751-8000
Fax (787) 756-5250
hdvc@vclawpr.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of August, 2024, a true and correct copy of the above pleading was served on all counsel of record via the Court's electronic case filing system (CM/ECF).

*/s/ Kaja S. Elmer*
Kaja S. Elmer